UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALEXIS WILLIS and JERNOIS JOHNSON, Jr., individually and as parents and next friends of NA'JAI JOHNSON, a minor, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| ADVOCATE HEALTH CARE NETWORK, d/b/a ADVOCATE HEALTHCARE, an Illinois corporation; ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, an Illinois corporation; CHICAGO FAMILY HEALTH CENTER, INC., an Illinois corporation; MARJORIE MICHEL, M.D.; and SHELLEY T. AMUH, M.D., | ) ) ) ) ) ) ) ) ) ) ) ) ) | No.<br><br>Judge<br><br>Formerly Case No. 2020 L 002753 Circuit Court of Cook County, Illinois |
| Defendants, and | ) ) | |
| CENTURY MEDICAL CENTER; and PINIT CHIRANAND, M.D., | ) ) ) | |
| Respondents in Discovery. | ) | |

**NOTICE OF REMOVAL OF A CIVIL ACTION AND
<u>SUBSTITUTION OF THE UNITED STATES AS DEFENDANT</u>**

To:    Dorothy Brown
Clerk of the Circuit Court
Richard J. Daley Center, Room 1001
50 West Washington Street
Chicago, Illinois 60602

James T. Rollins
Wais, Vogelstein, Forman & Offutt, LLC
120 S. LaSalle Street, Suite 1910
Chicago, Illinois 60603
jim@malpracticeteam.com

Michael E. Kerns
3075 Highland Parkway, Suite 600
Downers Grove, Illinois 60515

Shelley T. Amuh, M.D.
2320 East 93rd Street
Chicago, Illinois 60617

Century Medical Center
6853 S. Halsted Street
Chicago, Illinois 60621

Pinit Chiranand, M.D.
4676 W. 82nd Street
Chicago, Illinois 60652

The United States, by its attorney, John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, submits this notice of removal of the above-captioned civil action from the Circuit Court of Cook County, Illinois, to the United States District Court, Northern District of Illinois, pursuant to 42 U.S.C. § 233, and in support thereof states the following:

1.      On March 6, 2020, plaintiffs Alexis Willis and Jernois Johnson, Jr., as parents and next friends of Na'Jai Johnson, a minor, commenced the above civil action against Chicago Family Health Center, Inc., Marjorie Michel, M.D., and others, alleging medical malpractice. A copy of the state court complaint is attached as Exhibit A. For purposes of this lawsuit, Chicago Family Health Center, Inc. is a private entity that receives grant money from the Public Health Service pursuant to 42 U.S.C. § 233. Exhibit B. In addition, Marjorie Michel, M.D., was acting within the scope of her employment at Chicago Family Health Center with respect to the incidents referred to in the complaint. *Id.*

2.      This notice of removal is filed in accordance with 42 U.S.C. § 233 upon certification by the designee of the Attorney General of the United States that defendant Chicago Family Health Center, Inc. was a private entity receiving grant money from the Public Health Service and that defendant Marjorie Michel, M.D., was acting within the scope of her employment at the Chicago Family Health Center, Inc. with respect to the incidents referred to in the complaint. Exhibit B.

3.      This notice of removal may be filed without bond at any time before trial. 42 U.S.C. § 233(c). Trial has not yet been had in this action.

4.      Pursuant to the certification by the Attorney General's designee and the filing of this notice of removal, under 42 U.S.C. § 233(c), this civil action is deemed an action against the

United States, and the United States is substituted as the sole federal party defendant in place of defendants Chicago Family Health Center, Inc. and Marjorie Michel, M.D.

WHEREFORE, this action now pending in the Circuit Court of Cook County, Illinois, is properly removed to this court pursuant to 42 U.S.C. § 233, and the United States is substituted as the defendant in lieu of Chicago Family Health Center, Inc. and Marjorie Michel, M.D.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Michael D. Claus
    MICHAEL D. CLAUS
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 469-6021
    michael.claus@usdoj.gov

**Certificate of Service**

The undersigned Assistant United States Attorney hereby certifies that in accordance with

Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF), the following

document:

NOTICE OF REMOVAL OF A CIVIL ACTION AND SUBSTITUTION OF THE
UNITED STATES AS DEFENDANT

was served pursuant to the district court's ECF system as to ECF filers, if any, and was sent by

first-class mail on October, 2, 2020 to the following non-ECF filers:

James T. Rollins
Wais, Vogelstein, Forman & Offutt, LLC
120 S. LaSalle Street, Suite 1910
Chicago, Illinois 60603
jim@malpracticeteam.com

Shelley T. Amuh, M.D.
2320 East 93rd Street
Chicago, Illinois 60617

Michael E. Kerns
3075 Highland Parkway, Suite 600
Downers Grove, Illinois 60515

Pinit Chiranand, M.D.
4676 W. 82nd Street
Chicago, Illinois 60652

Century Medical Center
6853 S. Halsted Street
Chicago, Illinois 60621

    s/ Michael D. Claus
MICHAEL D. CLAUS
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 469-6021
michael.claus@usdoj.gov

# EXHIBIT A

Civil Action Cover Sheet - Case Initiation                     (05/27/16) CCL 0520

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

**FILED**
3/6/2020 12:17 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020L002753

Alexis Willis and Jernois Johnson, Jr., Individually, and as Parents and l

v.

8763344

Advocate Health Care Network d/b/a Advocate Health Care, et. al.

**2020L002753**

No. _____

### CIVIL ACTION COVER SHEET - CASE INITIATION

A Civil Action Cover Sheet - Case Initiation shall be filed with the
complaint in all civil actions. The information contained herein
is for administrative purposes only and cannot be introduced into
evidence. Please check the box in front of the appropriate case
type which best characterizes your action. Only one (1) case type
may be checked with this cover sheet.
Jury Demand  ☐ Yes  ☐ No

(FILE STAMP)

### PERSONAL INJURY/WRONGFUL DEATH

CASE TYPES:
- ☐ 027 Motor Vehicle
- ☒ 040 Medical Malpractice
- ☐ 047 Asbestos
- ☐ 048 Dram Shop
- ☐ 049 Product Liability
- ☐ 051 Construction Injuries
  (Including Structural Work Act, Road
  Construction Injuries Act and negligence)
- ☐ 052 Railroad/FELA
- ☐ 053 Pediatric Lead Exposure
- ☐ 061 Other Personal Injury/Wrongful Death
- ☐ 063 Intentional Tort
- ☐ 064 Miscellaneous Statutory Action
  (Please Specify Below**)
- ☐ 065 Premises Liability
- ☐ 078 Fen-phen/Redux Litigation
- ☐ 199 Silicone Implant

### TAX & MISCELLANEOUS REMEDIES

CASE TYPES:
- ☐ 007 Confessions of Judgment
- ☐ 008 Replevin
- ☐ 009 Tax
- ☐ 015 Condemnation
- ☐ 017 Detinue
- ☐ 029 Unemployment Compensation
- ☐ 031 Foreign Transcript
- ☐ 036 Administrative Review Action
- ☐ 085 Petition to Register Foreign Judgment
- ☐ 099 All Other Extraordinary Remedies

By: __Jim Rollins, Esq.__

     (Attorney)                              (Pro Se)

### COMMERCIAL LITIGATION

CASE TYPES:
- ☐ 002 Breach of Contract
- ☐ 070 Professional Malpractice
  (other than legal or medical)
- ☐ 071 Fraud (other than legal or medical)
- ☐ 072 Consumer Fraud
- ☐ 073 Breach of Warranty
- ☐ 074 Statutory Action
  (Please specify below.**)
- ☐ 075 Other Commercial Litigation
  (Please specify below.**)
- ☐ 076 Retaliatory Discharge

### OTHER ACTIONS

CASE TYPES:
- ☐ 062 Property Damage
- ☐ 066 Legal Malpractice
- ☐ 077 Libel/Slander
- ☐ 079 Petition for Qualified Orders
- ☐ 084 Petition to Issue Subpoena
- ☐ 100 Petition for Discovery

\_\_ _____

Primary Email: __jim@malpracticeteam.com__

Secondary Email: __Karley@malpracticeteam.com__

Tertiary Email: _____

**Pro Se Only:** ☐ I have read and agree to the terms of the *Clerk's Office Electronic Notice Policy* and choose to opt in to electronic notice
form the **Clerk's Office** for this case at this email address: _____

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

**12-Person Jury**

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

FILED
3/6/2020 12:17 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020L002753

8763344

ALEXIS WILLIS and JERNOIS JOHNSON, JR.          )
Individually, and as Parents and Next Friends of   )
NA'JAI JOHNSON, a Minor                          )
6808 S. Dorchester Avenue, Apartment 3           )
Chicago, IL 60637                                )
                                                 )
        Plaintiffs,                          )
                                                 )
v.                                               )
                                                 )
ADVOCATE HEALTH CARE NETWORK d/b/a               )
ADVOCATE HEALTH CARE                             )
                                                 )
    **Serve on:**                               )
    Michael E. Kerns                            )
    3075 Highland Parkway, Suite 600            )
    Downers Grove, IL 60515                     )
                                                 )
and                                              )
                                                 )
ADVOCATE HEALTH AND HOSPITALS                    )          **2020L002753**
CORPORATION d/b/a ADVOCATE TRINITY               )   CASE NO.:_____
HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP          )
                                                 )
    **Serve on:**                               )   *Plaintiff Demands Jury by 12*
    Michael E. Kerns                            )
    3075 Highland Parkway, Suite 600            )
    Downers Grove, IL 60515                     )
                                                 )
and                                              )
                                                 )
CHICAGO FAMILY HEALTH CENTER, INC.               )
                                                 )
    **Serve on:**                               )
    Barrett Hatches                             )
    9119 S. Exchange Avenue                     )
    Chicago, IL 60617                           )
                                                 )
and                                              )
                                                 )
MARJORIE MICHEL, M.D.                            )
2850 W. 95th Street, Suite 203                   )
Evergreen Park, IL 60805                         )

FILED
3/6/2020 12:17 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020L002753

and                               )

)

)

SHELLEY T. AMUH, M.D.             )

2320 East 93rd Street                 )

Chicago, IL 60617                    )

                                   )

          Defendants, and             )      **2020L002753**

)

CENTURY MEDICAL CENTER     )

6853 S. Halsted Street              )

Chicago, IL 60621                    )

                                   )

and                               )

                                   )

PINIT CHIRANAND, M.D.        )

4676 W. 82nd Street                 )

Chicago, IL 60652                    )

                                   )

      Respondents in Discovery.      )

## PLAINTIFFS' COMPLAINT AT LAW

Plaintiffs, NA'JAI JOHNSON, a Minor, by and through her Parents and Next Friends ALEXIS WILLIS and JERNOIS JOHNSON, JR., and ALEXIS WILLIS and JERNOIS JOHNSON, JR., Individually, by and through their undersigned attorneys JAMES T. ROLLINS, ESQ. and WAIS, VOGELSTEIN, FORMAN & OFFUTT, LLC, complaining of Defendants ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, CHICAGO FAMILY HEALTH CENTER, INC., MARJORIE MICHEL, M.D., SHELLEY T. AMUH, M.D., and Respondents in Discovery CENTURY MEDICAL CENTER and PINIT CHIRANAND, M.D., and in support of their causes of action allege as follows:

## PARTIES AND JURISDICTION

2

1.　　This is an obstetrical malpractice action arising from the medical, nursing, and hospital care and treatment rendered to Alexis Willis and her then unborn child, Na'Jai Johnson, on January 9, 2017, at Advocate Trinity Hospital, located in the County of Cook, State of Illinois.

2.　　As a direct and proximate consequence of the negligent care and treatment rendered by the Defendants, Na'Jai Johnson was not timely and safely delivered and was caused to suffer severe and permanent hypoxic-ischemic brain damage, intraventricular hemorrhaging, global developmental delays, cognitive deficits, epilepsy, and cerebral palsy, among other permanent and catastrophic injuries and damages.

3.　　Alexis Willis is over the age of twenty-one years and is a resident citizen of the State of Illinois.

4.　　Jernois Johnson, Jr. is over the age of twenty-one years and is a resident citizen of the State of Illinois.

5.　　Alexis Willis and Jernois Johnson, Jr. are the natural and biological Parents and Next Friends of the minor Plaintiff, Na'Jai Johnson.

6.　　Na'Jai Johnson is a minor resident citizen of the State of Illinois and currently resides with her Parents and Next Friends, Alexis Willis and Jernois Johnson, Jr.

7.　　Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE is an Illinois corporation.

8.　　At all times relevant hereto, Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE owned and operated hospitals, medical clinics and practice groups, employed physicians and other healthcare providers and was otherwise engaged in the business of providing health care and treatment to those individuals in need thereof including Plaintiffs ALEXIS WILLIS and her then unborn daughter NA'JAI JOHNSON, a Minor.

3

At all times relevant hereto, Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE maintained offices in and transacted business in the County of Cook. Accordingly, venue is appropriate in the County of Cook and Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE is subject to the jurisdiction of this Court.

9. At all times relevant hereto, Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE acted directly, and/or by and/or through its actual and/or apparent agents, servants, and/or employees, all of whom acted within the scope of their agency and/or employment with respect to the care and treatment rendered to Plaintiffs ALEXIS WILLIS and NA`JAI JOHNSON including, but not limited to, Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, Defendant CHICAGO FAMILY HEALTH CENTER, INC., Defendant MARJORIE MICHEL, M.D., Defendant SHELLEY T. AMUH, M.D., JAMILAH DOYLE, R.N., other physicians, residents, labor and delivery nurses, and/or labor and delivery staff.

10. Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP is an Illinois corporation.

11. At all times relevant hereto, Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP owned and operated hospitals, medical clinics and practice groups, employed physicians and other healthcare providers and was otherwise engaged in the business of providing health care and treatment to those individuals in need thereof including Plaintiffs ALEXIS WILLIS

4

and her then unborn daughter NA'JAI JOHNSON, a Minor. At all times relevant hereto, Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP maintained offices in and transacted business in the County of Cook. Accordingly, venue is appropriate in the County of Cook and Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP is subject to the jurisdiction of this Court.

12.     At all times relevant hereto, Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP acted directly, and/or by and/or through its actual and/or apparent agents, servants, and/or employees, who acted within the scope of their agency and/or employment with respect to the care and treatment rendered to Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON including, but not limited to, Defendant CHICAGO FAMILY HEALTH CENTER, INC., Defendant MARJORIE MICHEL, M.D., Defendant SHELLEY T. AMUH, M.D., JAMILAH DOYLE, R.N., other physicians, residents, labor and delivery nurses, and/or labor and delivery staff. Additionally, at all times relevant hereto, Defendant ADVOCATE TRINITY HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP was acting as the actual and/or apparent agent, servant, and/or employee of Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE and within the scope of said agency and/or employment with respect to the care and treatment rendered to Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON.

13.     Defendant CHICAGO FAMILY HEALTH CENTER, INC. is an Illinois corporation.

5

14.     At all times relevant hereto, Defendant CHICAGO FAMILY HEALTH CENTER, INC. is and at all times relevant hereto owned and operated medical clinics, practice groups, and employed physicians and other healthcare providers and was engaged in the business of providing health care and treatment to those individuals in need thereof including Plaintiffs ALEXIS WILLIS and her then unborn daughter NA'JAI JOHNSON, a Minor. At all times relevant hereto, Defendant CHICAGO FAMILY HEALTH CENTER, INC. maintained offices in and transacted business in the County of Cook. Accordingly, venue is appropriate in the County of Cook and Defendant CHICAGO FAMILY HEALTH CENTER, INC. is subject to the jurisdiction of this Court.

15.     At all times relevant hereto, Defendant CHICAGO FAMILY HEALTH CENTER, INC. acted directly, and/or by and/or through its actual and/or apparent agents, servants, and/or employees, who acted within the scope of their agency and/or employment with respect to the care and treatment rendered to Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON including, but not limited to, Defendant MARJORIE MICHEL, M.D., other physicians, residents, labor and delivery nurses, and/or labor and delivery staff. Additionally, at all times relevant hereto, Defendants CHICAGO FAMILY HEALTH CENTER, INC. and MARJORIE MICHEL, M.D. were acting as the actual and/or apparent agents, servants, and/or employees of Defendants ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE and ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP and within the scope of said agency and/or employment with respect to the care and treatment rendered to Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON.

16.     Defendant MARJORIE MICHEL, M.D. is and at all times relevant hereto was a physician licensed by the State of Illinois and engaged in the practice of obstetrics and gynecology in this State rendering labor and delivery care and treatment to patients in need thereof, including

Plaintiffs ALEXIS WILLIS and her then unborn daughter NA'JAI JOHNSON. At all times relevant hereto, Defendant MARJORIE MICHEL, M.D. maintained offices in and transacted business in the County of Cook. Accordingly, venue is appropriate in the County of Cook and Defendant MARJORIE MICHEL, M.D. is subject to the jurisdiction of this Court.

17. At all times relevant hereto, Defendant MARJORIE MICHEL, M.D. acted directly, and/or as the actual and/or apparent agent, servant, and/or employee of Defendants CHICAGO FAMILY HEALTH CENTER, INC., ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, and ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP and within the scope of said agency and/or employment with respect to the care and treatment rendered to Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON.

18. Defendant SHELLEY T. AMUH, M.D. is and at all times relevant hereto was a physician licensed by the State of Illinois and engaged in the practice of obstetrics and gynecology in this State rendering labor and delivery care and treatment to patients in need thereof, including Plaintiffs ALEXIS WILLIS and her then unborn daughter NA'JAI JOHNSON. At all times relevant hereto, Defendant SHELLEY T. AMUH, M.D. maintained offices in and transacted business in the County of Cook. Accordingly, venue is appropriate in the County of Cook and Defendant SHELLEY T. AMUH, M.D. is subject to the jurisdiction of this Court.

19. At all times relevant hereto, Defendant SHELLEY T. AMUH, M.D. acted directly, and/or as the actual and/or apparent agent, servant, and/or employee of Defendants ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE and/or ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP and within the scope of said agency and/or employment

7

with respect to the care and treatment rendered to Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON.

20. JAMILAH DOYLE, R.N. is and at all times relevant hereto was a registered nurse licensed by the State of Illinois and was engaged in the practice of labor and delivery nursing providing care and treatment to individuals in need thereof including Plaintiffs ALEXIS WILLIS and her then unborn daughter NA'JAI JOHNSON. At all times relevant hereto, JAMILAH DOYLE, R.N. maintained offices in and transacted business in the County of Cook. Accordingly, venue is appropriate in the County of Cook and JAMILAH DOYLE, R.N. is subject to the jurisdiction of this Court.

21. At all times relevant hereto, JAMILAH DOYLE, R.N. acted directly, and/or as the actual and/or apparent agent, servant, and/or employee of Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE and/or Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP and within the scope of said agency and/or employment with respect to the care and treatment rendered to Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON.

22. Upon information and belief, Respondent in Discovery CENTURY MEDICAL CENTER is an Illinois corporation. At all times relevant hereto, Respondent in Discovery CENTURY MEDICAL CENTER owned and operated a healthcare facility, medical clinic, and employed physicians and other healthcare professionals in the State of Illinois and provided care and treatment to those in need thereof including Plaintiffs ALEXIS WILLIS and here then unborn daughter NA'JAI JOHNSON. At all times relevant hereto, Respondent in Discovery CENTURY MEDICAL CENTER maintained offices in and transacted business in the County of Cook.

8

Accordingly, venue is appropriate in the County of Cook and Respondent in Discovery CENTURY MEDICAL CENTER is subject to the jurisdiction of this Court.

23. At all times relevant thereto, Respondent in Discovery CENTURY MEDICAL CENTER acted directly, and/or by and/or through its respective actual and/or apparent agents, servants, and/or employees, who acted within the scope of their agency and/or employment with respect to the care and treatment of Plaintiffs ALEXIS WILLIS and her then unborn daughter NA'JAI JOHNSON including, but not limited to, Respondent in Discovery PINIT CHIRANAND, M.D., and other physicians and medical staff.

24. Respondent in Discovery PINIT CHIRANAND, M.D. is and at all times relevant hereto was a physician licensed by the State of Illinois and engaged in the practice of obstetrics and gynecology in this State rendering obstetrical and gynecological care and treatment to patients in need thereof, including Plaintiffs ALEXIS WILLIS and her then unborn daughter NA'JAI JOHNSON. Respondent in Discovery PINIT CHIRANAND, M.D. is and at all times relevant hereto maintained offices in and transacted business in the County of Cook. Accordingly, venue is appropriate in the County of Cook and Respondent in Discovery PINIT CHIRANAND, M.D. is subject to the jurisdiction of this Court.

25. At all times relevant hereto, Respondent in Discovery PINIT CHIRANAND, M.D. acted directly, and/or as the actual and/or apparent agent, servant, and/or employee of Respondent in Discovery CENTURY MEDICAL CENTER and within the scope of said agency and/or employment with respect to the care and treatment rendered to Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON.

26. At all times relevant hereto, Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, Defendant ADVOCATE HEALTH AND

9

HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, Defendant CHICAGO FAMILY HEALTH CENTER, INC., Defendant MARJORIE MICHEL, M.D., Defendant SHELLEY T. AMUH, M.D., JAMILAH DOYLE, R.N., Respondent in Discovery CENTURY MEDICAL CENTER, and Respondent in Discovery PINIT CHIRANAND, M.D., directly, and/or acting by and through their respective actual and/or apparent, agents, servants, and/or employees held themselves out to Plaintiffs ALEXIS WILLIS, JERNOIS JOHNSON, JR., and NA'JAI JOHNSON, a Minor, in particular, and the public in general, as being an able and skilled health care system, hospital, practice group, obstetrician and gynecologist, and/or labor and delivery nurse possessing that level of care and skill required by the medical profession generally under like and similar circumstances and that they were well able to render proper, reasonable, and adequate labor and delivery and obstetrical care and treatment to Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON at all times.

27. At all times relevant hereto, Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, Defendant CHICAGO FAMILY HEALTH CENTER, INC., Defendant MARJORIE MICHEL, M.D., Defendant SHELLEY T. AMUH, M.D., JAMILAH DOYLE, R.N., Respondent in Discovery CENTURY MEDICAL CENTER, and Respondent in Discovery PINIT CHIRANAND, M.D., directly, and/or acting by and through their respective actual and/or apparent, agents, servants, and/or employees owed a duty of care to treat Plaintiffs ALEXIS WILLIS, JERNOIS JOHNSON, JR., and NA'JAI JOHNSON, a Minor with such reasonable diligence, skill, competence, and prudence as practiced by a reasonably competent health care system, hospital, practice group, obstetrician and gynecologist, and/or labor and delivery nurse

10

practicing under like and similar circumstances in the same or similar specialty or general field of practice.

28.     At all times relevant hereto, Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, Defendant CHICAGO FAMILY HEALTH CENTER, INC., Defendant MARJORIE MICHEL, M.D., Defendant SHELLEY T. AMUH, M.D., JAMILAH DOYLE, R.N., Respondent in Discovery CENTURY MEDICAL CENTER, and Respondent in Discovery PINIT CHIRANAND, M.D. acted directly, and/or as the principal and/or actual and/or apparent agent, servant, and/or employee of each other, and acted at all times relevant hereto within the scope of their respective authority such that each was the principal and/or actual and/or apparent agent, servant, and/or employee of the other.

## FACTS COMMON TO ALL COUNTS

29.     On January 9, 2017 Alexis Willis (hereinafter "Ms. Willis") presented to the emergency department at Advocate Trinity Hospital at approximately 3:00 p.m.

30.     At the time of her arrival Ms. Willis complained of decreased fetal movement and a headache lasting two weeks.

31.     This was Ms. Willis' first pregnancy and the medical records indicate that she received her prenatal care from Pinit Chiranand, M.D. Based on a prior dating ultrasound performed at Advocate Trinity Hospital in August 2016 it was determined that Ms. Willis was 32 weeks, 1 day pregnant.

32.     Preliminary laboratory results were collected at 3:18 p.m. and were suggestive of preeclampsia as Ms. Willis had a marked increase of protein in her urine and an abnormally elevated protein/creatinine ratio.

33.     Given Ms. Willis' complaints of a constant headache and preliminary blood pressures obtained by Jamilah Doyle, R.N. (hereinafter "Nurse Doyle") at 3:30 p.m. (130/93) and 3:45 p.m. (131/101) the diagnosis of severe preeclampsia was confirmed.

34.     Shortly after arrival, Ms. Willis was also connected to electronic fetal heart rate monitoring. At 3:34 p.m. Nurse Doyle documented her assessment of the fetal heart rate tracing in the nursing flowsheets as Category III based on reported absent variability, absent accelerations, and variable decelerations.

35.     Despite documenting a Category III fetal heart rate tracing Nurse Doyle failed to page Marjorie Michel, M.D. (hereinafter "Dr. Michel") or Shelley T. Amuh, M.D. (hereinafter "Dr. Amuh") to the bedside to evaluate maternal and fetal status. According to the medical records Nurse Doyle additionally failed to initiate intrauterine resuscitative measures to improve fetal oxygenation.

36.     At 3:48 p.m. Dr. Michel entered an order admitting Ms. Willis to labor and delivery triage at Advocate Trinity Hospital on an outpatient basis with the reported diagnosis listed as decreased fetal movement. Dr. Michel additionally issued an order for a STAT biophysical profile. However, the order for the biophysical profile was subsequently canceled and the assessment was never performed.

37.     Contemporaneously, Nurse Doyle authored a progress note which was identified as a "late entry" indicating that Ms. Willis' blood pressure remained elevated and the plan of care was continued monitoring.

12

38.     Following Dr. Michel's orders Nurse Doyle continued to record hypertensive blood pressures with intermittent severe features at 4:00 p.m. (149/98), 4:15 p.m. (168/105), and 4:30 p.m. (157/92). Nurse Doyle also reported in the flowsheets at 4:00 p.m. that the fetal heart rate tracing remained Category III.

39.     The medical records are devoid of any indication that Nurse Doyle notified Dr. Michel or Dr. Amuh of the abnormalities in the fetal heart rate tracing or Ms. Willis' elevated blood pressures. However, Nurse Doyle initiated intravenous fluids at 4:05 p.m. presumably for intrauterine resuscitation of Ms. Willis' fetus.

40.     After more than 70 minutes, Nurse Doyle contacted Dr. Michel at 4:45 p.m. informing her for the first time of the reported Category III fetal heart rate. In response, additional intrauterine resuscitative measures were started with maternal oxygen and intravenous fluids.

41.     At this time Dr. Amuh reviewed the electronic fetal heart rate tracing and after a discussion concerning the plan of care, Ms. Willis was transferred for induction of labor. At 5:00 p.m. Nurse Doyle once again documented in the nursing flowsheets a Category III fetal heart rate tracing and the intervention option listed included "Prep for OR."

42.     In light of Ms. Willis' clinical presentation, magnesium sulfate and labetalol 20 mg were initiated at 5:10 p.m. Nurse Doyle documented in a progress note at 5:07 p.m. that Dr. Michel was at the bedside evaluating Ms. Willis with a plan to perform a bedside ultrasound.

43.     This ultrasound order was never executed, however, because at 5:13 p.m. there was a prolonged deceleration in the fetal heart rate that ultimately evolved into a terminal bradycardia. Following this sudden deterioration in fetal heart rate status Dr. Michel elected to move toward emergent delivery at 5:15 p.m. and a single 12 mg IM dose of betamethasone was administered at 5:19 p.m.

13

44. Ms. Willis arrived in the operating room at 5:27 p.m. Prior to the surgical incision, the fetal heart rate was assessed and reported as bradycardic at 90 beats per minute.

45. Dr. Michel made her incision at 5:36 p.m. and Na'Jai Johnson was delivered through thin odorless meconium stained amniotic fluid at 5:38 p.m. on January 9, 2017.

46. At the time of birth Na'Jai Johnson was pale/pink, limp, and her heart rate was reported at less than 100 bpm. Immediate neonatal resuscitative efforts were initiated including tactile stimulation, suctioning with bulb syringe, and intubation with an ETT.

47. Na'Jai Johnson's Apgar scores were reported as 3, 5, and 7 at one, five, and ten minutes of life, respectively.

48. According to Dr. Michel's operative report, the fetal heart rate tracing was initially Category II before decelerating from the "110s to 100s to the 90s" prompting emergent delivery. During delivery Dr. Michel reported that Na'Jai Johnson's umbilical cord snapped at the umbilical stump impeding her ability to obtain venous and arterial blood gases.

49. Dr. Michel additionally reported that during delivery a blood clot was noted on the uterine portion of the placenta consistent with abruption. Surgical pathology assessment of Ms. Willis' placental confirmed the suspected placental abruption.

50. In the immediate newborn period Na'Jai Johnson was found to be hypoglycemic requiring IV D10W bolus and glucose administration. She was also reported to have respiratory distress.

51. Initial venous blood gases obtained showed metabolic acidosis with a pH of 7.18 and base deficit of -8. In light of Na'Jai Johnson's clinical condition she was transferred to the NICU at Advocate Christ Medical Center for higher level care.

14

52. Following her admission to the NICU, Na'Jai Johnson's blood gases showed persistent and worsening metabolic acidosis with a pH of 7.19 and base deficit of -16.

53. Preliminary laboratory results additionally showed findings consistent with target organ dysfunction secondary to hypoxia and ischemia.

54. An initial head ultrasound performed on January 10, 2017 was reported as showing findings of Grade IV intraventricular hemorrhage, evidence of edema, and concern for hypoxic-ischemic injury. Ischemic changes extending into the periventricular white matter and thalami were reportedly confirmed by subsequent ultrasound imaging studies.

55. A brain MRI performed on February 8, 2017 revealed further findings consistent with a Grade IV intraventricular hemorrhage.

56. Following a 35-day NICU admission Na'Jai Johnson was discharged on February 14, 2017. Today Nai'Jai Johnson suffers from global developmental delays, epilepsy, microcephaly, and cerebral volume loss among other sequela of her permanent neurological injuries and damages.

## COUNT ONE: INSTITUTIONAL NEGLIGENCE OF ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE

Plaintiffs, NA'JAI JOHNSON, a minor by and through her Parents and Next Friends, ALEXIS WILLIS and JERNOIS JOHNSON, JR., and ALEXIS WILLIS and JERNOIS JOHNSON, JR., individually, complaining of Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, allege as follows:

57. Plaintiffs restate and re-allege the preceding paragraphs of this Complaint as if fully stated herein.

15

58.     That Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, acting directly, and/or by and/or through its actual and/or apparent agents, servants, and/or employees, including, but not limited to, Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, Defendant CHICAGO FAMILY HEALTH CENTER, INC., Defendant MARJORIE MICHEL, M.D., Defendant SHELLEY T. AMUH, M.D., JAMILAH DOYLE, R.N., and other labor and delivery health care providers owed a duty of care to Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON to exercise that degree of care and skill that a reasonably prudent health system, hospital, practice group, obstetrician and gynecologist, and/or labor and delivery nurse would have exercised under the same or similar circumstances.

59.     At all times relevant hereto, ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, acting directly, and/or by and/or through its actual and/or apparent agents, servants, and/or employees, including, but not limited to, Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, Defendant CHICAGO FAMILY HEALTH CENTER, INC., Defendant MARJORIE MICHEL, M.D., Defendant SHELLEY T. AMUH, M.D., JAMILAH DOYLE, R.N. acted within the scope of said agency, servitude, and/or employment in rendering care and treatment to Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON.

60.     That Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, acting directly, and/or by and/or through its actual and/or apparent agents, servants, and/or employees, including, but not limited to, Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, Defendant CHICAGO FAMILY HEALTH CENTER, INC., Defendant

MARJORIE MICHEL, M.D., Defendant SHELLEY T. AMUH, M.D., JAMILAH DOYLE, R.N., and other labor and delivery health care providers, breached the applicable standards of care and were negligent in one or more of the following ways:

a. By failing to adequately train, supervise and/or monitor its actual and/or apparent agents, servants and/or employees, including Jamilah Doyle R.N., Marjorie Michel, M.D., Shelley T. Amuh, M.D. and other labor and delivery health care providers in the proper interpretation of fetal monitoring tracings, implementation of fetal resuscitative measures in response to fetal intolerance to labor and/or non-reassuring fetal heart rate status, consultation with obstetricians, performance of a timely STAT, URGENT, and/or emergency cesarean section delivery, and/or implementation of the chain-of-command;

b. Failing to provide appropriately trained and skilled personnel to care for Alexis Willis during her January 9, 2017 labor and delivery admission;

c. Failing to establish and/or enforce policies and safe practices to properly recognize and treat non-reassuring fetal heart rate patterns indicative of decreased fetal oxygenation, hypoxia, non-reassuring fetal status, and/or fetal intolerance to labor known to cause severe injury and/or death;

d. Failing to establish and/or enforce policies and safe practices pertaining to implementation of intrauterine resuscitative measures in response to fetal intolerance to labor and non-reassuring fetal heart rate patterns including decelerations, decreases in fetal heart rate baseline, minimal, and absent variability;

e. Failing to establish and/or enforce policies and safe practices pertaining to labor and delivery nurses including, but not limited to, Jamilah Doyle, R.N. notifying

17

obstetricians of non-reassuring fetal heart rate patterns indicative of decreased fetal oxygenation, hypoxia, non-reassuring fetal status, and/or fetal intolerance to labor known to cause severe injury and/or death;

f.  Failing to establish and/or enforce policies and safe practices pertaining to labor and delivery nurses including, but not limited to, Jamilah Doyle, R.N. notifying obstetricians of non-reassuring fetal heart rate patterns indicative of decreased fetal oxygenation, hypoxia, non-reassuring fetal status, and/or fetal intolerance to labor known to cause severe injury and/or death which fail to improve or normalize in the setting of intrauterine resuscitative measures; and

g.  Failing to establish and/or enforce policies and safe practices pertaining to labor and delivery nurses including, but not limited to, Jamilah Doyle, R.N. implementing the chain-of-command in response to physicians' action or inactions that are likely to lead to serious injury to mother and/or fetus or even death.

61.  But for the negligence of Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, jointly and severally, the injuries and damages of Plaintiffs (as described herein) would not have occurred. Furthermore, the injuries and damages of Plaintiffs (as described herein) would not have occurred had Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, directly, and jointly and severally, acted in accordance with the standards of care required of a similarly situated health care system engaged in obstetrical care and treatment in Chicago, Cook County, Illinois or in a similar locality.

62.  As a direct and proximate result of Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE's negligence, jointly and severally (as described herein), Plaintiff, NA'JAI JOHNSON, suffered perinatal asphyxia, terminal

18

bradycardia, fetal distress, hypoxic-ischemic encephalopathy, irreversible brain damage and deficits, cerebral palsy, seizures, global developmental delays, cognitive deficits, poor motor skills, and other permanent and disabling injuries and damages, and was and will be hindered and prevented from attending to her usual business and affairs and she was otherwise permanently injured in mind and body, including, but not limited to physical injury, great pain and mental anguish experienced in the past and which will continue to be experienced in the future, past, present and future medical and related expenses, disfigurement, diminished quality of life, a loss of earnings and earnings capacity, the need for special equipment and devices to help compensate for her impairments and/or disfigurement, the need for special schooling, and housing due to her impairments, and other damages.

63. As a further direct and proximate result of the aforesaid negligent acts and/or omissions of Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, the minor Plaintiff, NA'JAI JOHNSON, has required and will continue to require substantial medical, nursing, and related care: various types of therapies, such as physical, occupational, speech, rehabilitation, psychological and pharmaceutical; and other care including specialized devices, equipment, transportation and housing for which significant sums of money have been and will continue to be expended in the past, present, and future.

64. Attached as Exhibit "A" is an Affidavit of Attorney James T. Rollins as required by 735 ILCS 5/2-622.

65. The medical records of ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP have been reviewed by physicians specializing in the same areas of health care for more than six years who are knowledgeable in the relevant issues involved in this case and who are of

the opinion that the Defendants, ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, CHICAGO FAMILY HEALTH CENTER, INC., MARJORIE MICHEL, M.D., SHELLEY T. AMUH, M.D., and JAMILAH DOYLE, R.N., directly, and/or acting by and/or through their respective actual and/or apparent agents, servants, and/or employees were negligent in the care and treatment of Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON, a minor. Attached as Exhibit "B" is the expert report of Andrew W. Robertson, M.D.

WHEREFORE, Plaintiffs, NA'JAI JOHNSON, a Minor, by and through her Parents and Next Friends, ALEXIS WILLIS and JERNOIS JOHNSON, JR., and ALEXIS WILLIS and JERNOIS JOHNSON, JR., Individually, pray that this Honorable Court enter judgment against Defendant, ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE for a sum in excess of the jurisdictional requirements of this Court, costs of suit, and any other relief that this Honorable Court finds fair and just. PLAINTIFF DEMANDS A TRIAL BY JURY OF TWELVE.

## COUNT TWO: VICARIOUS LIABILITY OF ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE

Plaintiffs, NA'JAI JOHNSON, a minor by and through her Parents and Next Friends, ALEXIS WILLIS and JERNOIS JOHNSON, JR., and ALEXIS WILLIS and JERNOIS JOHNSON, JR., individually, complaining of Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, allege as follows:

66.     Plaintiffs restate and re-allege the preceding paragraphs of this Complaint as if fully stated herein.

67.     That Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, acting directly, and/or by and/or through its actual and/or apparent agents, servants, and/or employees, including, but not limited to, Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, Defendant CHICAGO FAMILY HEALTH CENTER, INC., Defendant MARJORIE MICHEL, M.D., Defendant SHELLEY T. AMUH, M.D., JAMILAH DOYLE, R.N., and other labor and delivery health care providers owed a duty of care to Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON to exercise that degree of care and skill that a reasonably prudent health system, hospital, practice group, obstetrician and gynecologist, and/or labor and delivery nurse would have exercised under the same or similar circumstances.

68.     At all times relevant hereto, ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, acting directly, and/or by and/or through its actual and/or apparent agents, servants, and/or employees, including, but not limited to, Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, Defendant CHICAGO FAMILY HEALTH CENTER, INC., Defendant MARJORIE MICHEL, M.D., Defendant SHELLEY T. AMUH, M.D., and JAMILAH DOYLE, R.N. acted within the scope of said agency, servitude, and/or employment in rendering care and treatment to Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON.

69.     That Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, acting directly, and/or by and/or through its actual and/or apparent agents, servants, and/or employees, including, but not limited to, Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, Defendant CHICAGO FAMILY HEALTH CENTER, INC., Defendant

21

MARJORIE MICHEL, M.D., Defendant SHELLEY T. AMUH, M.D., JAMILAH DOYLE, R.N., and other labor and delivery health care providers, breached the applicable standards of care and were negligent in one or more of the following ways:

a. By failing to properly assess Alexis Willis and Na'Jai Johnson's status during labor and delivery;

b. By failing to recognize and appreciate Alexis Willis' condition and to do so on a timely basis;

c. By failing to timely recognize, diagnosis, and treat Alexis Willis' preeclampsia and/or severe preeclampsia;

d. By failing to timely recognize the need for and administer magnesium sulfate;

e. By failing to timely recognize the need for and administer betamethasone;

f. By failing to recognize and appreciate Na'Jai Johnson's condition and to do so on a timely basis;

g. By failing to appropriately interpret electronic fetal heart rate monitoring;

h. By failing to timely and appropriately respond to electronic fetal heart rate monitoring evidencing signs and symptoms indicative of decreased fetal oxygenation, hypoxia, non-reassuring fetal status, and/or fetal intolerance to labor;

i. By failing to timely and appropriately diagnosis fetal hypoxia, non-reassuring fetal status, and/or fetal intolerance to labor;

j. By failing to timely and appropriately notify available health care providers of changes in maternal and fetal status;

k. By failing to timely and appropriately contact available health care providers;

22

l. By failing to timely and appropriately request a bedside consultation with available healthcare providers in light of Alexis Willis and Na'Jai Johnson's clinical presentation;

m. By failing to properly manage and monitor Alexis Willis' labor and delivery so as to prevent avoidable injury to Na'Jai Johnson;

n. By failing to accurately and timely document maternal and fetal status in the medical records;

o. By failing to timely and appropriately respond to Alexis Willis' complaints of decreased fetal movement including, but not limited to, performing a biophysical profile;

p. By failing to perform a timely cesarean section delivery;

q. By failing to deliver Na'Jai Johnson by timely cesarean section delivery;

r. By failing to implement appropriate intrauterine resuscitative measures in the setting of a non-reassuring fetal heart rate tracing;

s. By failing to appreciate the significant changes in fetal well-being, which became progressively worse proximal to delivery;

t. By failing to obtain appropriate consultations and/or appropriately utilize information available to them;

u. By failing to intervene in a timely manner to prevent severe injuries to Na'Jai Johnson;

v. By failing to appropriately monitor, report, and respond to signs and symptoms of decreased fetal oxygenation, hypoxia, and/or fetal intolerance to labor;

w. By failing to following policies, procedures. and practices in managing Alexis Willis' labor and delivery;

x. By failing to follow policies, procedures. and safe practices in monitoring. reporting, and responding to signs of decreased fetal oxygenation, hypoxia, and/or fetal intolerance to labor; and

y. By developing a plan of care that was inconsistent with the health, safety, and welfare of Alexis Willis and her fetus.

70.    But for the negligence of Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE acting directly, and by and through its actual and/or apparent agents, servants, and/or employees including, but not limited to. ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, CHICAGO FAMILY HEALTH CENTER, INC., MARJORIE MICHEL. M.D., SHELLEY T. AMUH, M.D., and JAMILAH DOYLE. R.N., jointly and severally, the injuries and damages of Plaintiffs (as described herein) would not have occurred. Furthermore, the injuries and damages of Plaintiffs (as described herein) would not have occurred had Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE acting directly, and by and through its actual and/or apparent agents, servants, and/or employees. jointly and severally. acted in accordance with the standards of care required of a similarly situated health care system, hospital. practice group. obstetrician and gynecologist. and/or labor and delivery nurse engaged in obstetrical care and treatment in Chicago. Cook County. Illinois or in a similar locality.

71.    As a direct and proximate result of Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE's negligence acting directly, and by and through its actual and/or apparent agents, servants. and/or employees, jointly and severally (as

24

described herein). Plaintiff, NA'JAI JOHNSON, suffered perinatal asphyxia, terminal bradycardia, fetal distress, hypoxic-ischemic encephalopathy, irreversible brain damage and deficits, cerebral palsy, seizures, global developmental delays, cognitive deficits, poor motor skills, and other permanent and disabling injuries and damages, and was and will be hindered and prevented from attending to her usual business and affairs and she was otherwise permanently injured in mind and body, including, but not limited to physical injury, great pain and mental anguish experienced in the past and which will continue to be experienced in the future, past, present and future medical and related expenses, disfigurement, diminished quality of life, a loss of earnings and earnings capacity, the need for special equipment and devices to help compensate for her impairments and/or disfigurement, the need for special schooling, and housing due to her impairments, and other damages.

72.    As a further direct and proximate result of the aforesaid negligent acts and/or omissions of Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, the minor Plaintiff, NA'JAI JOHNSON, has required and will continue to require substantial medical, nursing, and related care; various types of therapies, such as physical, occupational, speech, rehabilitation, psychological and pharmaceutical; and other care including specialized devices, equipment, transportation and housing for which significant sums of money have been and will continue to be expended in the past, present, and future.

73.    Attached as Exhibit "A" is an Affidavit of Attorney James T. Rollins as required by 735 ILCS 5/2-622.

74.    The medical records of ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP have been reviewed by physicians specializing in the same areas of health care for more

25

than six years who are knowledgeable in the relevant issues involved in this case and who are of the opinion that the Defendants, ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, CHICAGO FAMILY HEALTH CENTER, INC., MARJORIE MICHEL, M.D., SHELLEY T. AMUH, M.D., and JAMILAH DOYLE, R.N., directly, and/or acting by and/or through their respective actual and/or apparent agents, servants, and/or employees were negligent in the care and treatment of Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON, a minor. Attached as Exhibit "B" is the expert report of Andrew W. Robertson, M.D.

WHEREFORE, Plaintiffs, NA'JAI JOHNSON, a Minor, by and through her Parents and Next Friends, ALEXIS WILLIS and JERNOIS JOHNSON, JR., and ALEXIS WILLIS and JERNOIS JOHNSON, JR., Individually, pray that this Honorable Court enter judgment against Defendant, ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE for a sum in excess of the jurisdictional requirements of this Court, costs of suit, and any other relief that this Honorable Court finds fair and just. PLAINTIFF DEMANDS A TRIAL BY JURY OF TWELVE.

### COUNT THREE: INSTITUTIONAL NEGLIGENCE OF ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP

Plaintiffs, NA'JAI JOHNSON, a Minor, by and through her Parents and Next Friends, ALEXIS WILLIS and JERNOIS JOHNSON, JR., and ALEXIS WILLIS and JERNOIS JOHNSON, JR., Individually, complaining of Defendant ADVOCATE HEALTH AND

HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, allege as follows:

75.  Plaintiffs restate and re-allege the preceding paragraphs of this Complaint as if fully stated herein.

76.  That Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, acting directly, and/or by and/or through its actual and/or apparent agents, servants, and/or employees, including, but not limited to, Defendant CHICAGO FAMILY HEALTH CENTER, INC., Defendant MARJORIE MICHEL, M.D., Defendant SHELLEY T. AMUH, M.D., JAMILAH DOYLE, R.N., and other labor and delivery health care providers owed a duty of care to Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON to exercise that degree of care and skill that a reasonably prudent health system, hospital, practice group, obstetrician and gynecologist, and/or labor and delivery nurse would have exercised under the same or similar circumstances.

77.  At all times relevant hereto, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, acting directly, and/or by and/or through its actual and/or apparent agents, servants, and/or employees, including, but not limited to, Defendant CHICAGO FAMILY HEALTH CENTER, INC., Defendant MARJORIE MICHEL, M.D., Defendant SHELLEY T. AMUH, M.D., JAMILAH DOYLE, R.N. acted within the scope of said agency, servitude, and/or employment in rendering care and treatment to Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON.

78.  That Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, acting directly, and/or by and/or through its actual and/or apparent agents, servants, and/or employees,

27

including, but not limited to, Defendant CHICAGO FAMILY HEALTH CENTER, INC., Defendant MARJORIE MICHEL, M.D., Defendant SHELLEY T. AMUH, M.D., JAMILAH DOYLE, R.N., and other labor and delivery health care providers, breached the applicable standards of care and were negligent in one or more of the following ways:

a. By failing to adequately train, supervise and/or monitor its actual and/or apparent agents, servants and/or employees, including Jamilah Doyle R.N., Marjorie Michel, M.D., Shelley T. Amuh, M.D. and other labor and delivery health care providers in the proper interpretation of fetal monitoring tracings, implementation of fetal resuscitative measures in response to fetal intolerance to labor and/or non-reassuring fetal heart rate status, consultation with obstetricians, performance of a timely STAT, URGENT, and/or emergency cesarean section delivery, and/or implementation of the chain-of-command;

b. Failing to provide appropriately trained and skilled personnel to care for Alexis Willis during her January 9, 2017 labor and delivery admission;

c. Failing to establish and/or enforce policies and safe practices to properly recognize and treat non-reassuring fetal heart rate patterns indicative of decreased fetal oxygenation, hypoxia, non-reassuring fetal status, and/or fetal intolerance to labor known to cause severe injury and/or death;

d. Failing to establish and/or enforce policies and safe practices pertaining to implementation of intrauterine resuscitative measures in response to fetal intolerance to labor and non-reassuring fetal heart rate patterns including decelerations, decreases in fetal heart rate baseline, minimal, and absent variability;

28

e. Failing to establish and/or enforce policies and safe practices pertaining to labor and delivery nurses including, but not limited to, Jamilah Doyle, R.N. notifying obstetricians of non-reassuring fetal heart rate patterns indicative of decreased fetal oxygenation, hypoxia, non-reassuring fetal status, and/or fetal intolerance to labor known to cause severe injury and/or death;

f. Failing to establish and/or enforce policies and safe practices pertaining to labor and delivery nurses including, but not limited to, Jamilah Doyle, R.N. notifying obstetricians of non-reassuring fetal heart rate patterns indicative of decreased fetal oxygenation, hypoxia, non-reassuring fetal status, and/or fetal intolerance to labor known to cause severe injury and/or death which fail to improve or normalize in the setting of intrauterine resuscitative measures; and

g. Failing to establish and/or enforce policies and safe practices pertaining to labor and delivery nurses including, but not limited to, Jamilah Doyle, R.N. implementing the chain-of-command in response to physicians' action or inactions that are likely to lead to serious injury to mother and/or fetus or even death.

79. But for the negligence of Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, jointly and severally, the injuries and damages of Plaintiffs (as described herein) would not have occurred. Furthermore, the injuries and damages of Plaintiffs (as described herein) would not have occurred had Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, directly, and jointly and severally, acted in accordance with the standards of care required of a similarly

situated health care system or hospital engaged in obstetrical care and treatment in Chicago, Cook County, Illinois or in a similar locality.

80.     As a direct and proximate result of Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP's negligence, jointly and severally (as described herein), Plaintiff, NA'JAI JOHNSON, suffered perinatal asphyxia, terminal bradycardia, fetal distress, hypoxic-ischemic encephalopathy, irreversible brain damage and deficits, cerebral palsy, seizures, global developmental delays, cognitive deficits, poor motor skills, and other permanent and disabling injuries and damages, and was and will be hindered and prevented from attending to her usual business and affairs and she was otherwise permanently injured in mind and body, including, but not limited to physical injury, great pain and mental anguish experienced in the past and which will continue to be experienced in the future, past, present and future medical and related expenses, disfigurement, diminished quality of life, a loss of earnings and earnings capacity, the need for special equipment and devices to help compensate for her impairments and/or disfigurement, the need for special schooling, and housing due to her impairments, and other damages.

81.     As a further direct and proximate result of the aforesaid negligent acts and/or omissions of Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, the minor Plaintiff, NA'JAI JOHNSON, has required and will continue to require substantial medical, nursing, and related care; various types of therapies, such as physical, occupational, speech, rehabilitation, psychological and pharmaceutical; and other care including specialized devices, equipment, transportation and housing for which significant sums of money have been and will continue to be expended in the past, present, and future.

30

82. Attached as Exhibit "A" is an Affidavit of Attorney James T. Rollins as required by 735 ILCS 5/2-622.

83. The medical records of ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP have been reviewed by physicians specializing in the same areas of health care for more than six years who are knowledgeable in the relevant issues involved in this case and who are of the opinion that the Defendants. ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, CHICAGO FAMILY HEALTH CENTER, INC., MARJORIE MICHEL, M.D., SHELLEY T. AMUH, M.D., and JAMILAH DOYLE, R.N., directly, and/or acting by and/or through their respective actual and/or apparent agents, servants, and/or employees were negligent in the care and treatment of Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON, a minor. Attached as Exhibit "B" is the expert report of Andrew W. Robertson, M.D.

WHEREFORE. Plaintiffs, NA'JAI JOHNSON, a Minor, by and through her Parents and Next Friends. ALEXIS WILLIS and JERNOIS JOHNSON, JR., and ALEXIS WILLIS and JERNOIS JOHNSON, JR., Individually, pray that this Honorable Court enter judgment against Defendant, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP for a sum in excess of the jurisdictional requirements of this Court, costs of suit, and any other relief that this Honorable Court finds fair and just. PLAINTIFF DEMANDS A TRIAL BY JURY OF TWELVE.

## COUNT FOUR: VICARIOUS LIABILITY OF ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP

Plaintiffs, NA'JAI JOHNSON, a Minor, by and through her Parents and Next Friends, ALEXIS WILLIS and JERNOIS JOHNSON, JR., and ALEXIS WILLIS and JERNOIS JOHNSON, JR., Individually, complaining of Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, allege as follows:

84.     Plaintiffs restate and re-allege the preceding paragraphs of this Complaint as if fully stated herein.

85.     That Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, acting directly, and/or by and/or through its actual and/or apparent agents, servants, and/or employees, including, but not limited to, Defendant CHICAGO FAMILY HEALTH CENTER, INC., Defendant MARJORIE MICHEL, M.D., Defendant SHELLEY T. AMUH, M.D., JAMILAH DOYLE, R.N., and other labor and delivery health care providers owed a duty of care to Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON to exercise that degree of care and skill that a reasonably prudent health system, hospital, practice group, obstetrician and gynecologist, and/or labor and delivery nurse would have exercised under the same or similar circumstances.

86.     At all times relevant hereto, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, acting directly, and/or by and/or through its actual and/or apparent agents, servants, and/or employees, including, but not limited to, Defendant CHICAGO FAMILY HEALTH CENTER, INC., Defendant MARJORIE MICHEL, M.D., Defendant SHELLEY T. AMUH, M.D., JAMILAH DOYLE, R.N. acted within the scope of said agency, servitude, and/or employment in rendering care and treatment to Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON.

32

87.    That Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, acting directly, and/or by and/or through its actual and/or apparent agents, servants, and/or employees, including, but not limited to, Defendant CHICAGO FAMILY HEALTH CENTER, INC., Defendant MARJORIE MICHEL, M.D., Defendant SHELLEY T. AMUH, M.D., JAMILAH DOYLE, R.N., and other labor and delivery health care providers, breached the applicable standards of care and were negligent in one or more of the following ways:

    a.  By failing to properly assess Alexis Willis and Na'Jai Johnson's status during labor and delivery;

    b.  By failing to recognize and appreciate Alexis Willis' condition and to do so on a timely basis;

    c.  By failing to timely recognize, diagnosis, and treat Alexis Willis' preeclampsia and/or severe preeclampsia;

    d.  By failing to timely recognize the need for and administer magnesium sulfate;

    e.  By failing to timely recognize the need for and administer betamethasone;

    f.  By failing to recognize and appreciate Na'Jai Johnson's condition and to do so on a timely basis;

    g.  By failing to appropriately interpret electronic fetal heart rate monitoring;

    h.  By failing to timely and appropriately respond to electronic fetal heart rate monitoring evidencing signs and symptoms indicative of decreased fetal oxygenation, hypoxia, non-reassuring fetal status, and/or fetal intolerance to labor;

    i.  By failing to timely and appropriately diagnosis fetal hypoxia, non-reassuring fetal status, and/or fetal intolerance to labor;

33

j.  By failing to timely and appropriately notify available health care providers of changes in maternal and fetal status;

k.  By failing to timely and appropriately contact available health care providers;

l.  By failing to timely and appropriately request a bedside consultation with available healthcare providers in light of Alexis Willis and Na'Jai Johnson's clinical presentation;

m.  By failing to properly manage and monitor Alexis Willis' labor and delivery so as to prevent avoidable injury to Na'Jai Johnson;

n.  By failing to accurately and timely document maternal and fetal status in the medical records;

o.  By failing to timely and appropriately respond to Alexis Willis' complaints of decreased fetal movement including, but not limited to. performing a biophysical profile;

p.  By failing to perform a timely cesarean section delivery;

q.  By failing to deliver Na'Jai Johnson by timely cesarean section delivery;

r.  By failing to implement appropriate intrauterine resuscitative measures in the setting of a non-reassuring fetal heart rate tracing;

s.  By failing to appreciate the significant changes in fetal well-being, which became progressively worse proximal to delivery;

t.  By failing to obtain appropriate consultations and/or appropriately utilize information available to them;

u.  By failing to intervene in a timely manner to prevent severe injuries to Na'Jai Johnson;

34

v. By failing to appropriately monitor, report, and respond to signs and symptoms of decreased fetal oxygenation, hypoxia, and/or fetal intolerance to labor;

w. By failing to following policies, procedures, and practices in managing Alexis Willis' labor and delivery;

x. By failing to follow policies, procedures, and safe practices in monitoring, reporting, and responding to signs of decreased fetal oxygenation, hypoxia, and/or fetal intolerance to labor; and

y. By developing a plan of care that was inconsistent with the health, safety, and welfare of Alexis Willis and her fetus.

88. But for the negligence of Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP acting directly, and by and through its actual and/or apparent agents, servants, and/or employees including, but not limited to, CHICAGO FAMILY HEALTH CENTER, INC., MARJORIE MICHEL, M.D., SHELLEY T. AMUH, M.D., and JAMILAH DOYLE, R.N., jointly and severally, the injuries and damages of Plaintiffs (as described herein) would not have occurred. Furthermore, the injuries and damages of Plaintiffs (as described herein) would not have occurred had Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP acting directly, and by and through its actual and/or apparent agents, servants, and/or employees, jointly and severally, acted in accordance with the standards of care required of a similarly situated health care system, hospital, practice group, obstetrician and gynecologist, and/or labor and delivery nurse engaged in obstetrical care and treatment in Chicago, Cook County, Illinois or in a similar locality.

89.     As a direct and proximate result of Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP's negligence acting directly, and by and through its actual and/or apparent agents, servants, and/or employees, jointly and severally (as described herein), Plaintiff, NA'JAI JOHNSON, suffered perinatal asphyxia, terminal bradycardia, fetal distress, hypoxic-ischemic encephalopathy, irreversible brain damage and deficits, cerebral palsy, seizures, global developmental delays, cognitive deficits, poor motor skills, and other permanent and disabling injuries and damages, and was and will be hindered and prevented from attending to her usual business and affairs and she was otherwise permanently injured in mind and body, including, but not limited to physical injury, great pain and mental anguish experienced in the past and which will continue to be experienced in the future, past, present and future medical and related expenses, disfigurement, diminished quality of life, a loss of earnings and earnings capacity, the need for special equipment and devices to help compensate for her impairments and/or disfigurement, the need for special schooling, and housing due to her impairments, and other damages.

90.     As a further direct and proximate result of the aforesaid negligent acts and/or omissions of Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, the minor Plaintiff, NA'JAI JOHNSON, has required and will continue to require substantial medical, nursing, and related care; various types of therapies, such as physical, occupational, speech, rehabilitation, psychological and pharmaceutical; and other care including specialized devices, equipment, transportation and housing for which significant sums of money have been and will continue to be expended in the past, present, and future.

36

91.     Attached as Exhibit "A" is an Affidavit of Attorney James T. Rollins as required by 735 ILCS 5/2-622.

92.     The medical records of ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP have been reviewed by physicians specializing in the same areas of health care for more than six years who are knowledgeable in the relevant issues involved in this case and who are of the opinion that the Defendants, ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, CHICAGO FAMILY HEALTH CENTER, INC., MARJORIE MICHEL, M.D., SHELLEY T. AMUH, M.D., and JAMILAH DOYLE, R.N., directly, and/or acting by and/or through their respective actual and/or apparent agents, servants, and/or employees were negligent in the care and treatment of Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON, a minor. Attached as Exhibit "B" is the expert report of Andrew W. Robertson, M.D.

WHEREFORE, Plaintiffs, NA'JAI JOHNSON, a Minor, by and through her Parents and Next Friends, ALEXIS WILLIS and JERNOIS JOHNSON, JR., and ALEXIS WILLIS and JERNOIS JOHNSON, JR., Individually, pray that this Honorable Court enter judgment against Defendant, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP for a sum in excess of the jurisdictional requirements of this Court, costs of suit, and any other relief that this Honorable Court finds fair and just. PLAINTIFF DEMANDS A TRIAL BY JURY OF TWELVE.

## COUNT FIVE: VICARIOUS LIABILITY OF CHICAGO FAMILY HEALTH CENTER, INC.

37

Plaintiffs. NA'JAI JOHNSON, a Minor, by and through her Parents and Next Friends. ALEXIS WILLIS and JERNOIS JOHNSON, JR., and ALEXIS WILLIS and JERNOIS JOHNSON, JR., Individually, complaining of Defendant CHICAGO FAMILY HEALTH CENTER, INC., allege as follows:

93. Plaintiffs restate and re-allege the preceding paragraphs of this Complaint as if fully stated herein.

94. That Defendant CHICAGO FAMILY HEALTH CENTER, INC., acting directly, and/or by and/or through its actual and/or apparent agents, servants, and/or employees, including, but not limited to, Defendant MARJORIE MICHEL, M.D. and other labor and delivery health care providers owed a duty of care to Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON to exercise that degree of care and skill that a reasonably prudent health system, hospital, practice group, obstetrician and gynecologist, and/or labor and delivery nurse would have exercised under the same or similar circumstances.

95. At all times relevant hereto. Defendant CHICAGO FAMILY HEALTH CENTER, INC., acting directly, and/or by and/or through its actual and/or apparent agents, servants, and/or employees, including, but not limited to, Defendant MARJORIE MICHEL, M.D. acted within the scope of said agency, servitude, and/or employment in rendering care and treatment to Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON.

96. That Defendant CHICAGO FAMILY HEALTH CENTER, INC., acting directly, and/or by and/or through its actual and/or apparent agents, servants, and/or employees, including, but not limited to, Defendant MARJORIE MICHEL, M.D., and other labor and delivery health care providers, breached the applicable standards of care and were negligent in one or more of the following ways:

38

a. By failing to properly assess Alexis Willis and Na`Jai Johnson's status during labor and delivery;

b. By failing to recognize and appreciate Alexis Willis' condition and to do so on a timely basis.

c. By failing to timely recognize, diagnosis, and treat Alexis Willis' preeclampsia and/or severe preeclampsia;

d. By failing to timely recognize the need for and administer magnesium sulfate;

e. By failing to timely recognize the need for and administer betamethasone;

f. By failing to recognize and appreciate Na`Jai Johnson's condition and to do so on a timely basis;

g. By failing to appropriately interpret electronic fetal heart rate monitoring;

h. By failing to timely and appropriately respond to electronic fetal heart rate monitoring evidencing signs and symptoms indicative of decreased fetal oxygenation, hypoxia, non-reassuring fetal status, and/or fetal intolerance to labor,

i. By failing to timely and appropriately diagnosis fetal hypoxia, non-reassuring fetal status, and/or fetal intolerance to labor;

j. By failing to properly manage and monitor Alexis Willis' labor and delivery so as to prevent avoidable injury to Na`Jai Johnson;

k. By failing to accurately and timely document maternal and fetal status in the medical records;

l. By failing to timely and appropriately respond to Alexis Willis' complaints of decreased fetal movement including, but not limited to, performing a biophysical profile;

m. By failing to perform a timely cesarean section delivery;

n. By failing to deliver Na'Jai Johnson by timely cesarean section delivery;

o. By failing to implement appropriate intrauterine resuscitative measures in the setting of a non-reassuring fetal heart rate tracing;

p. By failing to appreciate the significant changes in fetal well-being, which became progressively worse proximal to delivery;

q. By failing to obtain appropriate consultations and/or appropriately utilize information available to them;

r. By failing to intervene in a timely manner to prevent severe injuries to Na'Jai Johnson;

s. By failing to appropriately monitor, report, and respond to signs and symptoms of decreased fetal oxygenation, hypoxia, and/or fetal intolerance to labor;

t. By failing to following policies, procedures, and practices in managing Alexis Willis' labor and delivery;

u. By failing to follow policies, procedures, and safe practices in monitoring, reporting, and responding to signs of decreased fetal oxygenation, hypoxia, and/or fetal intolerance to labor; and

v. By developing a plan of care that was inconsistent with the health, safety, and welfare of Alexis Willis and her fetus.

97. But for the negligence of Defendant CHICAGO FAMILY HEALTH CENTER, INC. acting directly, and by and through its actual and/or apparent agents, servants, and/or employees including, but not limited to, MARJORIE MICHEL, M.D., jointly and severally, the injuries and damages of Plaintiffs (as described herein) would not have occurred. Furthermore, the

injuries and damages of Plaintiffs (as described herein) would not have occurred had Defendant CHICAGO FAMILY HEALTH CENTER, INC. acting directly, and by and through its actual and/or apparent agents, servants, and/or employees, jointly and severally, acted in accordance with the standards of care required of a similarly situated health care system, hospital, practice group, obstetrician and gynecologist, and/or labor and delivery nurse engaged in obstetrical care and treatment in Chicago, Cook County, Illinois or in a similar locality.

98.     As a direct and proximate result of Defendant CHICAGO FAMILY HEALTH CENTER, INC.'s negligence acting directly, and by and through its actual and/or apparent agents, servants, and/or employees, jointly and severally (as described herein), Plaintiff, NA'JAI JOHNSON, suffered perinatal asphyxia, terminal bradycardia, fetal distress, hypoxic-ischemic encephalopathy, irreversible brain damage and deficits, cerebral palsy, seizures, global developmental delays, cognitive deficits, poor motor skills, and other permanent and disabling injuries and damages, and was and will be hindered and prevented from attending to her usual business and affairs and she was otherwise permanently injured in mind and body, including, but not limited to physical injury, great pain and mental anguish experienced in the past and which will continue to be experienced in the future, past, present and future medical and related expenses, disfigurement, diminished quality of life, a loss of earnings and earnings capacity, the need for special equipment and devices to help compensate for her impairments and/or disfigurement, the need for special schooling, and housing due to her impairments, and other damages.

99.     As a further direct and proximate result of the aforesaid negligent acts and/or omissions of Defendant CHICAGO FAMILY HEALTH CENTER, INC., the minor Plaintiff, NA'JAI JOHNSON, has required and will continue to require substantial medical, nursing, and related care; various types of therapies, such as physical, occupational, speech, rehabilitation,

psychological and pharmaceutical; and other care including specialized devices, equipment, transportation and housing for which significant sums of money have been and will continue to be expended in the past, present, and future.

100. Attached as Exhibit "A" is an Affidavit of Attorney James T. Rollins as required by 735 ILCS 5/2-622.

101. The medical records of ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP have been reviewed by physicians specializing in the same areas of health care for more than six years who are knowledgeable in the relevant issues involved in this case and who are of the opinion that the Defendants, ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, CHICAGO FAMILY HEALTH CENTER, INC., MARJORIE MICHEL, M.D., SHELLEY T. AMUH, M.D., and JAMILAH DOYLE, R.N., directly, and/or acting by and/or through their respective actual and/or apparent agents, servants, and/or employees were negligent in the care and treatment of Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON, a minor. Attached as Exhibit "B" is the expert report of Andrew W. Robertson, M.D.

WHEREFORE, Plaintiffs, NA'JAI JOHNSON, a Minor, by and through her Parents and Next Friends, ALEXIS WILLIS and JERNOIS JOHNSON, JR., and ALEXIS WILLIS and JERNOIS JOHNSON, JR., Individually, pray that this Honorable Court enter judgment against Defendant, CHICAGO FAMILY HEALTH CENTER, INC. for a sum in excess of the jurisdictional requirements of this Court, costs of suit, and any other relief that this Honorable Court finds fair and just. PLAINTIFF DEMANDS A TRIAL BY JURY OF TWELVE.

## COUNT SIX: MEDICAL NEGLIGENCE OF MARJORIE MICHEL, M.D.

Plaintiffs, NA'JAI JOHNSON, a Minor, by and through her Parents and Next Friends, ALEXIS WILLIS and JERNOIS JOHNSON, JR., and ALEXIS WILLIS and JERNOIS JOHNSON, JR., Individually, complaining of Defendant MARJORIE MICHEL, M.D., allege as follows:

102.    Plaintiffs restate and re-allege the preceding paragraphs of this Complaint as if fully stated herein.

103.    That Defendant MARJORIE MICHEL, M.D., acting directly, and/or as the actual and/or apparent agent, servant, and/or employee of ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, and CHICAGO FAMILY HEALTH CENTER, INC. owed a duty of care to Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON to exercise that degree of care and skill that a reasonably prudent health system, hospital, practice group, obstetrician and gynecologist, and/or labor and delivery nurse would have exercised under the same or similar circumstances.

104.    At all times relevant hereto, MARJORIE MICHEL, M.D., acting directly, and/or as the actual and/or apparent agent, servant, and/or employee of ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, and CHICAGO FAMILY HEALTH CENTER, INC. acted within the scope of said agency, servitude, and/or employment in rendering care and treatment to Alexis Willis and Na'Jai Johnson.

43

105.    That Defendant MARJORIE MICHEL, M.D., acting directly, and/or as the actual and/or apparent agent, servant, and/or employee of ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, and CHICAGO FAMILY HEALTH CENTER, INC. breached the applicable standards of care and were negligent in one or more of the following ways:

a.  By failing to properly assess Alexis Willis and Na'Jai Johnson's status during labor and delivery;

b.  By failing to recognize and appreciate Alexis Willis' condition and to do so on a timely basis;

c.  By failing to timely recognize, diagnosis, and treat Alexis Willis' preeclampsia and/or severe preeclampsia;

d.  By failing to timely recognize the need for and administer magnesium sulfate;

e.  By failing to timely recognize the need for and administer betamethasone;

f.  By failing to recognize and appreciate Na'Jai Johnson's condition and to do so on a timely basis;

g.  By failing to appropriately interpret electronic fetal heart rate monitoring;

h.  By failing to timely and appropriately respond to electronic fetal heart rate monitoring evidencing signs and symptoms indicative of decreased fetal oxygenation, hypoxia, non-reassuring fetal status, and/or fetal intolerance to labor;

i.  By failing to timely and appropriately diagnosis fetal hypoxia, non-reassuring fetal status, and/or fetal intolerance to labor;

44

j.   By failing to properly manage and monitor Alexis Willis' labor and delivery so as to prevent avoidable injury to Na'Jai Johnson;

k.   By failing to accurately and timely document maternal and fetal status in the medical records;

l.   By failing to timely and appropriately respond to Alexis Willis' complaints of decreased fetal movement including, but not limited to, performing a biophysical profile;

m.  By failing to perform a timely cesarean section delivery;

n.   By failing to deliver Na'Jai Johnson by timely cesarean section delivery;

o.   By failing to implement appropriate intrauterine resuscitative measures in the setting of a non-reassuring fetal heart rate tracing;

p.   By failing to appreciate the significant changes in fetal well-being, which became progressively worse proximal to delivery;

q.   By failing to obtain appropriate consultations and/or appropriately utilize information available to them;

r.   By failing to intervene in a timely manner to prevent severe injuries to Na'Jai Johnson;

s.   By failing to appropriately monitor, report, and respond to signs and symptoms of decreased fetal oxygenation, hypoxia, and/or fetal intolerance to labor;

t.   By failing to following policies, procedures, and practices in managing Alexis Willis' labor and delivery;

u. By failing to follow policies, procedures, and safe practices in monitoring, reporting, and responding to signs of decreased fetal oxygenation, hypoxia, and/or fetal intolerance to labor; and

v. By developing a plan of care that was inconsistent with the health, safety, and welfare of Alexis Willis and her fetus.

106. But for the negligence of Defendant MARJORIE MICHEL, M.D., acting directly, and/or as the actual and/or apparent agent, servant, and/or employee of ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, and CHICAGO FAMILY HEALTH CENTER, INC., jointly and severally, the injuries and damages of Plaintiffs (as described herein) would not have occurred. Furthermore, the injuries and damages of Plaintiffs (as described herein) would not have occurred had Defendant MARJORIE MICHEL, M.D., acting directly, and/or as the actual and/or apparent agent, servant, and/or employee of ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, and CHICAGO FAMILY HEALTH CENTER, INC. acted in accordance with the standards of care required of a similarly situated obstetrician and gynecologist providing care and treatment in Chicago, Cook County, Illinois or in a similar locality.

107. As a direct and proximate result of Defendant MARJORIE MICHEL M.D.'s negligence acting directly, and/or as the actual and/or apparent agent, servant, and/or employee of ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL

46

a/d/b/a ADVOCATE MEDICAL GROUP, and CHICAGO FAMILY HEALTH CENTER, INC.. jointly and severally (as described herein), Plaintiff, NA'JAI JOHNSON. suffered perinatal asphyxia. terminal bradycardia, fetal distress, hypoxic-ischemic encephalopathy, irreversible brain damage and deficits, cerebral palsy, seizures. global developmental delays, cognitive deficits, poor motor skills. and other permanent and disabling injuries and damages, and was and will be hindered and prevented from attending to her usual business and affairs and she was otherwise permanently injured in mind and body, including, but not limited to physical injury, great pain and mental anguish experienced in the past and which will continue to be experienced in the future. past, present and future medical and related expenses, disfigurement, diminished quality of life, a loss of earnings and earnings capacity. the need for special equipment and devices to help compensate for her impairments and/or disfigurement, the need for special schooling, and housing due to her impairments, and other damages.

108.     As a further direct and proximate result of the aforesaid negligent acts and/or omissions of Defendant MARJORIE MICHEL, M.D., the minor Plaintiff, NA'JAI JOHNSON, has required and will continue to require substantial medical. nursing, and related care; various types of therapies. such as physical, occupational, speech, rehabilitation, psychological and pharmaceutical: and other care including specialized devices. equipment, transportation and housing for which significant sums of money have been and will continue to be expended in the past, present, and future.

109.     Attached as Exhibit "A" is an Affidavit of Attorney James T. Rollins as required by 735 ILCS 5/2-622.

110. The medical records of ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP have been reviewed by physicians specializing in the same areas of health care for more than six years who are knowledgeable in the relevant issues involved in this case and who are of the opinion that the Defendants. ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, CHICAGO FAMILY HEALTH CENTER, INC., MARJORIE MICHEL, M.D., SHELLEY T. AMUH, M.D., and JAMILAH DOYLE, R.N., directly, and/or acting by and/or through their respective actual and/or apparent agents, servants, and/or employees were negligent in the care and treatment of Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON son, a minor. Attached as Exhibit "B" is the expert report of Andrew W. Robertson, M.D.

WHEREFORE, Plaintiffs, NA'JAI JOHNSON, a Minor, by and through her Parents and Next Friends, ALEXIS WILLIS and JERNOIS JOHNSON, JR., and ALEXIS WILLIS and JERNOIS JOHNSON, JR., Individually, pray that this Honorable Court enter judgment against Defendant, MARJORIE MICHEL, M.D. for a sum in excess of the jurisdictional requirements of this Court, costs of suit, and any other relief that this Honorable Court finds fair and just. PLAINTIFF DEMANDS A TRIAL BY JURY OF TWELVE.

## COUNT SEVEN: MEDICAL NEGLIGENCE OF SHELLEY T. AMUH, M.D.

Plaintiffs, NA'JAI JOHNSON, a Minor, by and through her Parents and Next Friends, ALEXIS WILLIS and JERNOIS JOHNSON, JR., and ALEXIS WILLIS and JERNOIS JOHNSON, JR., Individually, complaining of Defendant SHELLEY T. AMUH, M.D., allege as follows:

48

111.     Plaintiffs restate and re-allege the preceding paragraphs of this Complaint as if fully stated herein.

112.     That Defendant SHELLEY T. AMUH, M.D. acting directly, and/or as the actual and/or apparent agent, servant, and/or employee of ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP owed a duty of care to Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON to exercise that degree of care and skill that a reasonably prudent health system, hospital, practice group, obstetrician and gynecologist, and/or labor and delivery nurse would have exercised under the same or similar circumstances.

113.     At all times relevant hereto, SHELLEY T. AMUH, M.D. acting directly, and/or as the actual and/or apparent agent, servant, and/or employee of ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP acted within the scope of said agency, servitude, and/or employment in rendering care and treatment to Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON.

114.     That Defendant SHELLEY T. AMUH, M.D., acting directly, and/or as the actual and/or apparent agent, servant, and/or employee of ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP breached the applicable standards of care and were negligent in one or more of the following ways:

49

a. By failing to properly assess Alexis Willis and Na'Jai Johnson's status during labor and delivery;

b. By failing to recognize and appreciate Alexis Willis' condition and to do so on a timely basis;

c. By failing to timely recognize, diagnosis, and treat Alexis Willis' preeclampsia and/or severe preeclampsia;

d. By failing to timely recognize the need for and administer magnesium sulfate;

e. By failing to timely recognize the need for and administer betamethasone;

f. By failing to recognize and appreciate Na'Jai Johnson's condition and to do so on a timely basis;

g. By failing to appropriately interpret electronic fetal heart rate monitoring;

h. By failing to timely and appropriately respond to electronic fetal heart rate monitoring evidencing signs and symptoms indicative of decreased fetal oxygenation, hypoxia, non-reassuring fetal status, and/or fetal intolerance to labor;

i. By failing to timely and appropriately diagnosis fetal hypoxia, non-reassuring fetal status, and/or fetal intolerance to labor;

j. By failing to properly manage and monitor Alexis Willis' labor and delivery so as to prevent avoidable injury to Na'Jai Johnson;

k. By failing to accurately and timely document maternal and fetal status in the medical records;

l. By failing to timely and appropriately respond to Alexis Willis' complaints of decreased fetal movement including, but not limited to, performing a biophysical profile;

50

m. By failing to perform a timely cesarean section delivery;

n. By failing to deliver Na'Jai Johnson by timely cesarean section delivery;

o. By failing to implement appropriate intrauterine resuscitative measures in the setting of a non-reassuring fetal heart rate tracing;

p. By failing to appreciate the significant changes in fetal well-being, which became progressively worse proximal to delivery;

q. By failing to obtain appropriate consultations and/or appropriately utilize information available to them;

r. By failing to intervene in a timely manner to prevent severe injuries to Na'Jai Johnson;

s. By failing to appropriately monitor, report, and respond to signs and symptoms of decreased fetal oxygenation, hypoxia, and/or fetal intolerance to labor;

t. By failing to following policies, procedures, and practices in managing Alexis Willis' labor and delivery;

u. By failing to follow policies, procedures, and safe practices in monitoring, reporting, and responding to signs of decreased fetal oxygenation, hypoxia, and/or fetal intolerance to labor; and

v. By developing a plan of care that was inconsistent with the health, safety, and welfare of Alexis Willis and her fetus.

115. But for the negligence of Defendant SHELLEY T. AMUH, M.D., acting directly, and/or as the actual and/or apparent agent, servant, and/or employee of ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE

51

MEDICAL GROUP, jointly and severally, the injuries and damages of Plaintiffs (as described herein) would not have occurred. Furthermore, the injuries and damages of Plaintiffs (as described herein) would not have occurred had Defendant SHELLEY T. AMUH, M.D., acting directly, and/or as the actual and/or apparent agent, servant, and/or employee of ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP acted in accordance with the standards of care required of a similarly situated obstetrician and gynecologist providing care and treatment in Chicago, Cook County, Illinois or in a similar locality.

116. As a direct and proximate result of Defendant SHELLEY T. AMUH, M.D.'s negligence acting directly, and/or as the actual and/or apparent agent, servant, and/or employee of ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, jointly and severally (as described herein), Plaintiff, NA'JAI JOHNSON, suffered perinatal asphyxia, terminal bradycardia, fetal distress, hypoxic-ischemic encephalopathy, irreversible brain damage and deficits, cerebral palsy, seizures, global developmental delays, cognitive deficits, poor motor skills, and other permanent and disabling injuries and damages, and was and will be hindered and prevented from attending to her usual business and affairs and she was otherwise permanently injured in mind and body, including, but not limited to physical injury, great pain and mental anguish experienced in the past and which will continue to be experienced in the future, past, present and future medical and related expenses, disfigurement, diminished quality of life, a loss of earnings and earnings capacity, the need for

special equipment and devices to help compensate for her impairments and/or disfigurement, the need for special schooling, and housing due to her impairments, and other damages.

117. As a further direct and proximate result of the aforesaid negligent acts and/or omissions of Defendant SHELLEY T. AMUH, M.D., the minor Plaintiff, NA'JAI JOHNSON, has required and will continue to require substantial medical, nursing, and related care; various types of therapies, such as physical, occupational, speech, rehabilitation, psychological and pharmaceutical; and other care including specialized devices, equipment, transportation and housing for which significant sums of money have been and will continue to be expended in the past, present, and future.

118. Attached as Exhibit "A" is an Affidavit of Attorney James T. Rollins as required by 735 ILCS 5/2-622.

119. The medical records of ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP have been reviewed by physicians specializing in the same areas of health care for more than six years who are knowledgeable in the relevant issues involved in this case and who are of the opinion that the Defendants, ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, CHICAGO FAMILY HEALTH CENTER, INC., MARJORIE MICHEL, M.D., SHELLEY T. AMUH, M.D., and JAMILAH DOYLE, R.N., directly, and/or acting by and/or through their respective actual and/or apparent agents, servants, and/or employees were negligent in the care and treatment of Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON, a minor. Attached as Exhibit "B" is the expert report of Andrew W. Robertson, M.D.

53

WHEREFORE, Plaintiffs, NA'JAI JOHNSON, a Minor, by and through her Parents and Next Friends, ALEXIS WILLIS and JERNOIS JOHNSON, JR., and ALEXIS WILLIS and JERNOIS JOHNSON, JR., Individually, pray that this Honorable Court enter judgment against Defendant, SHELLEY T. AMUH, M.D. for a sum in excess of the jurisdictional requirements of this Court, costs of suit, and any other relief that this Honorable Court finds fair and just. PLAINTIFF DEMANDS A TRIAL BY JURY OF TWELVE.

### COUNT EIGHT: MEDICAL NEGLIGENCE – ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, CHICAGO FAMILY HEALTH CENTER, INC., MARJORIE MICHEL, M.D., and SHELLEY T. AMUH, M.D. – PARENTAL CLAIM

Plaintiffs, ALEXIS WILLIS and JERNOIS JOHNSON, JR., Individually complaining of Defendant ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, Defendant ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, Defendant CHICAGO FAMILY HEALTH CENTER, INC., Defendant MARJORIE MICHEL, M.D., Defendant SHELLEY T. AMUH, M.D., directly, and/or acting by and/or through their respective actual and/or apparent agents, servants, and/or employees, allege as follows:

120. Plaintiffs restate and re-allege the preceding paragraphs of this First Amended Complaint as if fully stated herein.

121. As a further and direct and proximate resulted on the negligent acts and/or omissions as alleged herein by Defendants ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, CHICAGO

54

FAMILY HEALTH CENTER, INC., MARJORIE MICHEL, M.D., SHELLEY T. AMUH, M.D., and JAMILAH DOYLE, R.N., directly, and/or acting by and/or through their respective actual and/or apparent agents, servants, and/or employees, and each of them jointly and severally (as described above), Plaintiff, NA'JAI JOHNSON, suffered perinatal asphyxia, terminal bradycardia, fetal distress, hypoxic-ischemic encephalopathy, irreversible brain damage and deficits, cerebral palsy, seizures, global developmental delays, cognitive deficits, poor motor skills, and other permanent and disabling injuries and damages, and was and will be hindered and prevented from attending to her usual business and affairs and she was otherwise permanently injured in mind and body, including, but not limited to physical injury, great pain and mental anguish experienced in the past and which will continue to be experienced in the future, past, present and future medical and related expenses, disfigurement, diminished quality of life, a loss of earnings and earnings capacity, the need for special equipment and devices to help compensate for her impairments and/or disfigurement, the need for special schooling, and housing due to her impairments, and other damages.

122.  As a further direct and proximate result of the aforesaid negligent acts and/or omissions of Defendants ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, CHICAGO FAMILY HEALTH CENTER, INC., MARJORIE MICHEL, M.D., SHELLEY T. AMUH, M.D., and JAMILAH DOYLE, R.N., directly, and/or acting by and/or through their respective actual and/or apparent agents, servants, and/or employees, ALEXIS WILLIS and JERNOIS JOHNSON, JR., have in the past and will be required in the future to expend extraordinary sums of monies to provide medical, nursing, attendant, and related care; various types of therapies, such as physical,

occupational, speech, rehabilitation, psychological and pharmaceutical; and other expenses including specialized devices, equipment, transportation and housing to care for their daughter NA'JAI JOHNSON.

123.    Attached as Exhibit "A" is an Affidavit of Attorney James T. Rollins as required by 735 ILCS 5/2-622.

124.    The medical records of ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP have been reviewed by physicians specializing in the same areas of health care for more than six years who are knowledgeable in the relevant issues involved in this case and who are of the opinion that the Defendants ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, CHICAGO FAMILY HEALTH CENTER, INC., MARJORIE MICHEL, M.D., SHELLEY T. AMUH, M.D., and JAMILAH DOYLE, R.N., directly, and/or acting by and/or through their respective actual and/or apparent agents, servants, and/or employees, and labor and delivery staff were negligent in the care and treatment of Plaintiffs ALEXIS WILLIS and NA'JAI JOHNSON, a minor. Attached as Exhibit "B" is the expert report of Andrew W. Robertson, M.D.

WHEREFORE, ALEXIS WILLIS and JERNOIS JOHNSON, JR., Individually pray that this Honorable Court enter judgment against Defendants ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, CHICAGO FAMILY HEALTH CENTER, INC., MARJORIE MICHEL, M.D., and SHELLEY T. AMUH, M.D., jointly and severally for each of them in a sum in excess of the

56

jurisdictional requirements of this Court, costs of suit, and any other relief that this Honorable Court finds fair and just. PLAINTIFF DEMANDS A TRIAL BY JURY OF TWELVE.

### COUNT NINE: FAMILY EXPENSE ACT 750 ILCS 65/15(a)(1)

Plaintiffs, NA'JAI JOHNSON, a Minor, by and through her Parents and Next Friends, ALEXIS WILLIS and JERNOIS JOHNSON, JR., and ALEXIS WILLIS and JERNOIS JOHNSON, JR., Individually, complaining of ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, CHICAGO FAMILY HEALTH CENTER, INC., MARJORIE MICHEL, M.D., and SHELLEY T. AMUH, M.D., directly, and/or acting by and/or through their respective actual and/or apparent agents, servants, and/or employees, alleges as follows:

125.    As a direct and proximate result of the aforesaid negligent acts and/or omissions of Defendants ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, CHICAGO FAMILY HEALTH CENTER, INC., MARJORIE MICHEL, M.D., SHELLEY T. AMUH, M.D., and JAMILAH DOYLE, R.N., directly, and/or acting by and/or through their respective actual and/or apparent agents, servants, and/or employees, and labor and delivery staff, ALEXIS WILLIS and JERNOIS JOHNSON, JR. as Parents and Next Friends of Plaintiff, NA'JAI JOHNSON, a minor, have in the past, and will continue to incur in the future, substantial medical, nursing, and related care expenses.

126.    Pursuant to 750 ILCS 65/15(a)(1), as Parents and Next Friends of the minor Plaintiff, NA'JAI JOHNSON, ALEXIS WILLIS and JERNOIS JOHNSON are obligated to pay the "expenses of the family."

WHEREFORE, Plaintiffs, NA'JAI JOHNSON, a minor, by and through her Parents and Next Friends, ALEXIS WILLIS and JERNOIS JOHNSON, JR., prays that this Honorable Court enter judgment against Defendants, ADVOCATE HEALTH CARE NETWORK d/b/a ADVOCATE HEALTH CARE, ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE TRINITY HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP, CHICAGO FAMILY HEALTH CENTER, INC., MARJORIE MICHEL, M.D., and SHELLEY T. AMUH, M.D., jointly and severally and for each of them in a sum in excess of the jurisdictional requirements of this Court, costs of suit, and any other relief that this Honorable Court finds fair and just. PLAINTIFF DEMANDS A TRIAL BY JURY OF TWELVE.

### COUNT TEN: RESPONDENT IN DISCOVERY CENTURY MEDICAL CENTER

127.    Based upon Plaintiffs' investigation and discovery, it is believed that CENTURY MEDICAL CENTER has information necessary to litigate this case.

128.    Plaintiffs have attached Interrogatories and Requests for Production of Documents directed to CENTURY MEDICAL CENTER as Respondent in Discovery, and respectfully requests that responses be served to in accordance with the time period set forth in the Illinois Supreme Court Rules.

### COUNT ELEVEN: RESPONDENT IN DISCOVERY PINIT CHIRANAND, M.D.

129.    Based upon Plaintiffs' investigation and discovery, it is believed that PINIT CHIRANAND, M.D. has information necessary to litigate this case.

58

130.    Plaintiffs have attached Interrogatories and Requests for Production of Documents directed to PINIT CHIRANAND, M.D. as Respondent in Discovery, and respectfully requests that responses be served to in accordance with the time period set forth in the Illinois Supreme Court Rules.

Respectfully submitted,

James Rollins

James T. Rollins
WAIS, VOGELSTEIN, FORMAN & OFFUTT, LLC #64381
120 S. LaSalle Street, Suite 1910
Chicago, Illinois 60603
T: (312) 993-5750
F: (312) 577-0644
Email: jim@malpracticeteam.com
*Attorneys for Plaintiffs*

Keith D. Forman, *pro hac vice to be applied for*
Myles J. Poster, *pro hac vice to be applied for*
WAIS, VOGELSTEIN, FORMAN & OFFUTT, LLC.
1829 Reisterstown Road, Suite 425
Baltimore, MD 21208
T: (410) 998-3600
F: (410) 998-3680
*Attorneys for Plaintiffs*

FILED
3/6/2020 12:17 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020L002753

8763344

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

ALEXIS WILLIS and JERNOIS JOHNSON, JR.       )
Individually, and as Parents and Next Friends of   )
NA'JAI JOHNSON, a Minor                       )
6808 S. Dorchester Avenue, Apartment 3        )
Chicago, IL 60637                             )
                                              )
       Plaintiffs,                        )
                                              )
v.                                            )
                                              )
ADVOCATE HEALTH CARE NETWORK d/b/a            )
ADVOCATE HEALTH CARE                          )
                                              )
    Serve on:                              )
    Michael E. Kerns                       )
    3075 Highland Parkway, Suite 600       )
    Downers Grove, IL 60515                )
                                              )
and                                           )
                                              )
ADVOCATE HEALTH AND HOSPITALS                 )
CORPORATION d/b/a ADVOCATE TRINITY            )    CASE NO.: **2020L002753**
HOSPITAL a/d/b/a ADVOCATE MEDICAL GROUP       )
                                              )
    Serve on:                              )
    Michael E. Kerns                       )
    3075 Highland Parkway, Suite 600       )
    Downers Grove, IL 60515                )
                                              )
and                                           )
                                              )
CHICAGO FAMILY HEALTH CENTER, INC.            )
                                              )
    Serve on:                              )
    Barrett Hatches                        )
    9119 S. Exchange Avenue                )
    Chicago, IL 60617                      )
                                              )
and                                           )
                                              )
MARJORIE MICHEL, M.D.                         )
2850 W. 95th Street, Suite 203               )
Evergreen Park, IL 60805                      )

FILED
3/6/2020 12:17 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020L002753

and                                                    )
                                                       )
                                                       )
SHELLEY T. AMUH. M.D.                                  )
2320 East 93rd Street                                  )
Chicago, IL 60617                                      )
                                                       )          2020L002753
                                                       )
        Defendants, and                                )
                                                       )
CENTURY MEDICAL CENTER                                 )
6853 S. Halsted Street                                 )
Chicago. IL 60621                                      )
                                                       )
and                                                    )
                                                       )
PINIT CHIRANAND. M.D.                                  )
4676 W. 82nd Street                                    )
Chicago, IL 60652                                      )
                                                       )
        Respondents in Discovery.                      )

## 735 ILCS 2-622(a)(2) AFFIDAVIT

I, JAMES T. ROLLINS, after duly being sworn upon oath. depose and state as follows:

1.  I am one of the attorneys of record for the Plaintiffs, Alexis Willis. Jernois Johnson, Jr., and Na`Jai Johnson, a Minor.

2.  I have reviewed the facts of this case with a health care professional whom I reasonably believe to be knowledgeable in the relevant issues of this litigation, and who practices or has practiced within the last 6 years, or teaches or has taught within the last 6 years in the same area of health care or medicine that is at issue in this litigation, and has reviewed the medical records of ALEXIS WILLIS and NA`JAI JOHNSON for all treating physicians and hospitals for the relevant periods of time.

3.  This health care professional is qualified by experience or demonstrated competence in the subject matter of this case.

4.  This health care professional has completed an initial report after a thorough review of the medical records and other relevant materials and provided the opinion that there is reasonable and meritorious cause for the filing of this action. Signed copies of this health care professional's report is attached hereto and incorporated herein by reference.

5.  I have concluded based upon this health care professional's report and opinions that there is reasonable and meritorious cause for the filing of this action.

2

6.    This Affidavit is provided pursuant to 735 ILCS 5/2-622 (a)(1).

FURTHER AFFIANT SAYETH NAUGHT.

Respectfully submitted,

James T. Rollins

Law Offices of:
WAIS, VOGELSTEIN, FORMAN & OFFUTT, LLC #64381
120 S. LaSalle Street, Suite 1910
Chicago, Illinois 60603
T: (312) 993-5750
F: (312) 577-0644
Email: jim@malpracticeteam.com
*Attorneys for Plaintiffs*

SUBSCRIBED and SWORN to
Before me this 4th day of March, 2020.

Notary Public

My commission expires: 1/22/2022

OFFICIAL SEAL"
andy L. Hansen
PUBLIC, STATE OF ILLINOIS
My Commission Expires 11/22/22

3

**ANDREW W. ROBERTSON, M.D.**
Methodist Perinatal Center
Methodist Women's Hospital
2nd Floor, Suite 2400
Omaha, NE 68022

Keith D. Forman, Esq.
Myles J. Poster, Esq.
Wais, Vogelstein, Forman & Offutt, LLC
1829 Reisterstown Road, Suite 425
Baltimore, MD 21208

     *Re:*    *Na'Jai Johnson, et al. v. Advocate Trinity Hospital, et al.*

Dear Mr. Poster:

     At your request I have completed my review of the labor and delivery records of Alexis Willis from her January 9, 2017 admission to Advocate Trinity Hospital. This includes available electronic fetal heart rate tracings. I have also reviewed Na'Jai Johnson's newborn admission records from Advocate Trinity Hospital and her NICU admission records from Advocate Christ Medical Center.

     Briefly by way of background, I am a medical doctor currently licensed to practice in the states of Nebraska, Texas, and Iowa. I graduated with honors from the University of Texas in 1975. I subsequently completed medical school at the University of Texas Medical Branch (Galveston), where I graduated with honors in 1979. I completed a Categorical Anesthesia Internship at Brooke Army Medical Center (San Antonio) in 1980, and then completed my Obstetrics and Gynecology Residency in 1983. I practiced general obstetrics and gynecology for two years from 1983 to 1985 before completing a Maternal-Fetal Medicine Fellowship at Madigan Army Medical Center (Tacoma) in 1987.

     Currently, I am Director of the Perinatal Center at the Methodist Women's Hospital in Omaha, Nebraska. Before this, I served as Director of Perinatal Services for William Beaumont Army Medical Center in El Paso, Texas. I have been practicing medicine continuously for over 39 years including during the time of events giving rise to this claim and as part of my practice have been, and remain involved in the diagnosis, care, and treatment of obstetrical patients with the same or similar presentation to that of Ms. Willis. Based on this knowledge, training, education, and experience, I am familiar with and qualified to offer opinions regarding the medical and nursing standards of care applicable to patients presenting with decreased fetal movement and hypertensive disorders of pregnancy such as Ms. Willis. These standards of care apply universally to healthcare providers throughout the United States. In addition, I interact with physicians and nursing staff at over 50 referral hospitals and clinics on a daily basis, and am familiar with the standard procedures for diagnosing and treating, the above-referenced obstetrical conditions, among many others, as well as their potential complications. I am regularly called upon to render consultations and in-service training to physicians and nurses on topics of: 1) preeclampsia; 2) decreased fetal movement; 3) the performance of biophysical profiles; 4) available treatment

options; and 5) the associated complications that can develop, all of which are pertinent to the instant case.

Based on my review, it is my opinion to a reasonable degree of medical probability that Advocate Health Care Network, Advocate Health and Hospitals Corporation d/b/a Advocate Trinity Hospital a/d/b/a Advocate Medical Group, and Chicago Family Health Center, Inc. acting directly, and/or by and/or through their respective agents, servants, and/or employees including, but not limited to, Jamilah Doyle, R.N., Shelley Amuh, M.D., and Marjorie Michel, M.D. (hereinafter collectively, the "Defendant Healthcare Providers"), deviated from the applicable standards of care in rendering care and treatment to Ms. Willis during her January 9, 2017 labor and delivery admission. It is also my opinion to a reasonable degree of medical probability that these departures from the standard of care, as more generally detailed below, were a direct and proximate cause of Na'Jai Johnson's hypoxic-ischemic injuries and permanent neurologic damages. In my medical opinion, meritorious cause exists for filing this action against the Defendant Healthcare Providers.

The relevant medical facts attendant to Ms. Willis' labor and delivery admission are as follows:

Ms. Willis presented to the emergency department at Advocate Trinity Hospital at approximately 1500 on January 9, 2017. At the time of arrival Ms. Willis complained of decreased fetal movement and a headache having last for 2 weeks. Ms. Willis was a primigravida and the records indicate that she received prenatal care from Dr. Chiranand and based on a previously performed ultrasound was 32 weeks, 1 day gestation. Initial laboratory results collected at 1518 were suggestive of preeclampsia as Ms. Willis had markedly increased proteinuria and an elevated protein/creatinine ratio. Coupled with Ms. Willis' complaints of cerebral disturbance (i.e., constant headache) preliminary blood pressures obtained by Jamilah Doyle, R.N. at 1530 (130/93) and 1545 (131/101) confirmed the diagnosis of severe preeclampsia.

Shortly after arrival, Ms. Willis was also connected to electronic fetal heart rate monitoring. At 1534 Nurse Doyle documented her assessment of the fetal heart rate tracing in the nursing flowsheets as Category III based on reported absent variability, absent accelerations, and variable decelerations. Despite documenting a Category III fetal heart rate tracing it does not appear that Nurse Doyle paged Dr. Michel or Dr. Amuh to the bedside to evaluate maternal and fetal status, nor does it appear that she initiated intrauterine resuscitative measures to improve fetal oxygenation.

At 1548 Marjorie Michel, M.D. entered an order admitting Ms. Willis to labor and delivery triage on an outpatient basis with the reported diagnosis listed as decreased fetal movement. Dr. Michel additionally issued an order for a STAT biophysical profile but that order was subsequently canceled. Contemporaneously, Nurse Doyle authored a progress note (late entry) indicating that Ms. Willis' blood pressure remained elevated and the plan of care was continued monitoring.

Following Dr. Michel's orders Nurse Doyle continued to record hypertensive blood pressures with intermittent severe features at 1600 (149/98), 1615 (168/105), and 1630 (157/92). Nurse Doyle also reported in the flowsheets at 1600 that the fetal heart rate tracing remained

2

Category III. Once again, it does not appear from the records that Dr. Michel or Dr. Amuh were notified of this fact; however, Nurse Doyle initiated IVF bolus at 1605 for intrauterine resuscitation.

After more than 70 minutes, Nurse Doyle contacted Dr. Michel at 1645 informing her for the first time of the reported Category III fetal heart rate. In response, additional intrauterine resuscitative measures were started with maternal oxygen and IVF bolus. At this time hospitalist Shelley Amuh, M.D. reviewed the electronic fetal heart rate tracing and after a discussion concerning the plan of care, Ms. Willis was transferred for induction of labor. At 1700 Nurse Doyle once again documented in the nursing flowsheets a Category III fetal heart rate tracing and listed intervention options included "Prep for OR."

In light of Ms. Willis' clinical presentation magnesium sulfate and labetalol 20 mg were initiated at 1710. Nurse Doyle documented in a progress note at 1707 that Dr. Michel was at the bedside evaluating Ms. Willis with a plan to perform a bedside ultrasound. This order was never executed, however, because at 1713 there was a prolonged deceleration in the fetal heart rate ultimately evolving into a terminal bradycardia. Following this sudden deterioration in fetal heart rate status Dr. Michel elected to move toward emergent delivery at 1715 and a single 12 mg IM dose of betamethasone was administered at 1719.

Ms. Willis arrived in the operating room at 1727. Prior to incision the fetal heart rate was assessed and reported as bradycardic at 90 bpm. Dr. Michel made her incision at 1736 and Na'Jai Johnson was delivered through thin odorless meconium stained amniotic fluid at 1738 on January 9, 2017.

At the time of birth Na'Jai was pale/pink, limp, and her heart rate was reported at less than 100 bpm. Immediate neonatal resuscitative efforts were initiated including tactile stimulation, suctioning with bulb syringe, and intubation with an ETT. Na'Jai's Apgar scores were reported as 3, 5, and 7 at one, five, and ten minutes of life, respectively.

According to Dr. Michel's operative report, the fetal heart rate tracing was initially Category II before decelerating from the "110s to 100s to the 90s" prompting emergent delivery. During delivery Dr. Michel reported that Na'Jai's umbilical cord snapped at the umbilical stump impeding her ability to obtain venous and arterial blood gases. Dr. Michel additionally reported that during delivery a blood clot was noted on the uterine portion of the placenta consistent with abruption. Surgical pathology assessment of Ms. Willis' placental confirmed the suspected placental abruption.

In the immediate newborn period Na'Jai was found to be hypoglycemic requiring IV D10W bolus and glucose administration. She was also reported to have respiratory distress. Initial venous blood gases obtained showed metabolic acidosis with a pH of 7.18 and base deficit of -8. In light of Na'Jai's condition she was transferred to the NICU at Advocate Christ Medical Center for higher level care.

Following her admission to the NICU, Na'Jai's blood gases showed persistent and worsening metabolic acidosis with a pH of 7.19 and base deficit of -16. Laboratory results

3

additionally showed findings consistent with target organ dysfunction secondary to hypoxia and ischemia. An initial head ultrasound performed on January 10, 2017 was reported as showing findings of Grade IV intraventricular hemorrhage, evidence of edema, and concern for hypoxic-ischemic injury. Ischemic changes extending into the periventricular white matter and thalami were reportedly confirmed by subsequent ultrasound imaging studies. A brain MRI performed on February 8, 2017 revealed further findings consistent with a Grade IV intraventricular hemorrhage.

Following a 35-day NICU admission Na'Jai Johnson was discharged on February 14, 2017. Today Nai'Jai suffers from global developmental delays, epilepsy, microcephaly, and cerebral volume loss among other sequela of her permanent neurological injuries and damages.

From my review of the medical records, it is my opinion to a reasonable degree of medical probability that Advocate Health Care Network, Advocate Health and Hospitals Corporation d/b/a Advocate Trinity Hospital a/d/b/a Advocate Medical Group, and Chicago Family Health Center, Inc. acting directly, and/or by and through their respective agents, servants, and/or employees including, but not limited to, Jamilah Doyle, R.N., Shelley Amuh, M.D., and Marjorie Michel, M.D. deviated from the applicable standards of care in rendering labor and delivery care and treatment to Ms. Willis in the following respects:

Nurse Doyle deviated from the applicable standards of care by failing to timely recognize and appropriately respond to abnormalities in the fetal heart rate tracing. Shortly after Ms. Willis' arrival at Advocate Trinity Hospital, Nurse Doyle began electronic fetal heart rate monitoring and reported her initial interpretation of the tracing at Category III. Based on the reported abnormalities in the fetal heart rate tracing the standard of care required that Nurse Doyle immediately page Dr. Michel and/or Dr. Amuh to the bedside to assess maternal and fetal status. The standard of care in this setting additionally required that Nurse Doyle timely implement intrauterine resuscitative measures to improve fetal status and oxygenation *in utero* pending Dr. Michel and/or Dr. Amuh's arrival at the bedside. Nurse Doyle failed to report the abnormalities in fetal status for more than 60 minutes and further failed to timely implement intrauterine resuscitative measures and her inaction was a violation of the standard of care.

Nurse Doyle additionally deviated from the applicable standards of care by failing to timely notify Dr. Michel and/or Dr. Amuh of Ms. Willis' hypertensive blood pressures. At 1548 Dr. Michel issued various orders requiring, among other things, that she be notified of systolic blood pressures greater than or equal to 160 mmHg and/or diastolic blood pressures greater than or equal to 105 mmHg. At 1615 Nurse Doyle reported in the medical records that Ms. Willis' blood pressure had risen to 168/105 and at 1630 was 157/92. Despite Dr. Michel's orders governing Ms. Willis' labor and delivery admission Nurse Doyle failed to timely notify available physicians of this fact and her inaction was a deviation from the applicable standards of care.

Nurse Doyle further deviated from the applicable standards of care by failing to timely notify Dr. Michel and/or Dr. Amuh of the continued non-reassuring fetal heart rate status despite implementation of intrauterine resuscitative measures. Approximately 30 minutes after documenting a Category III fetal heart rate tracing Nurse Doyle initiated IVF bolus in attempting to improve fetal status. Following this time the fetal heart rate tracing remained non-reassuring and began further deteriorating. The standard of care required that Nurse Doyle timely page Dr.

4

FILED DATE: 3/6/2020 12:17 PM   2020L002753

Michel and/or Dr. Amuh to the bedside at or around 1625 and implement additional intrauterine resuscitative measures. Nurse Doyle's delay in contacting Dr. Michel and/or Dr. Amuh, paging them to the bedside, and failure to implement additional resuscitative measures was a deviation from the applicable standards of care.

Dr. Michel deviated from the applicable standards of care by failing to timely order the administration of betamethasone and magnesium sulfate. At and after Ms. Willis' presentation, vital signs recorded preeclamptic blood pressures and Ms. Willis' initial laboratory results further established severe preeclampsia with markedly increased proteinuria and protein/creatinine ratios. In light of Ms. Willis' clinical presentation and available laboratory data, which Dr. Michel knew or should have known, the standard of care required timely betamethasone administration for fetal lung maturation and magnesium sulfate for maternal seizure prophylaxis and fetal neuroprotection. Inexplicably, these medications were not ordered or administered until shortly before Na'Jai's emergent delivery and Dr. Michel's delay was a deviation from the applicable standards of care.

Dr. Michel deviated from the applicable standards of care by failing to perform a timely biophysical profile in light of Ms. Willis' clinical presentation. Dr. Michel ordered a STAT biophysical profile at 1548. However, inexplicably this order was canceled. More likely than not, had a biophysical profile been performed as required by the applicable standards of care it would have shown findings concerning Ms. Willis' fetal status warranting more expeditious delivery. Accordingly, Dr. Michel's failure to perform a timely biophysical profile was a deviation from the applicable standards of care.

Dr. Michel and Dr. Amuh deviated from the applicable standards of care by failing to order a timely STAT or emergent cesarean section delivery. Nurse Doyle reported notifying Dr. Michel of the abnormalities in the fetal heart rate tracing at 1645 at which time Dr. Amuh reviewed the fetal heart rate tracing. Additional intrauterine resuscitative were also started with maternal oxygen and IVF bolus and Dr. Michel and Dr. Amuh's formulated a plan of care for induction of labor. Given Ms. Willis' reports of decreased fetal movement, severe preeclampsia, and deteriorating fetal status, the standard of care required that Dr. Michel and Dr. Amuh move toward timely cesarean section delivery not induction of labor. Dr. Michel and Dr. Amuh's failure to order cesarean section delivery at this time in light of available clinical evidence was a violation of the standards of care and unnecessarily delayed the delivery of Na'Jai Johnson.

It is additionally my opinion to a reasonable degree of medical probability that the applicable institutional standards of care required Advocate Health Care Network, Advocate Health and Hospitals Corporation d/b/a Advocate Trinity Hospital a/d/b/a Advocate Medical Group directly, and through labor and delivery staff, including Nurse Doyle, Dr. Michel, and Dr. Amuh to: a) properly assess maternal and fetal status in labor and delivery; b) adequately supervise obstetrical personnel; and c) establish, educate staff on, and enforce appropriate policies, procedures, and safe practice protocols in managing labor and delivery and responding to signs of non-reassuring fetal status. When viewed individually, and in their totality, the conduct of Nurse Doyle, Dr. Michel, Dr. Amuh and other labor and delivery personnel evidences a failure on the part of Advocate Health Care Network, Advocate Health and Hospitals Corporation d/b/a Advocate Trinity Hospital a/d/b/a Advocate Medical Group to: a) properly assess Ms. Willis and Na'Jai Johnson's status during labor and delivery; b) adequately train and supervise obstetrical

personnel; c) follow safe practices in monitoring, reporting and responding to signs of non-reassuring fetal status; and d) establishing, training, and enforcing appropriate policies, procedures, and protocols in managing Ms. Willis' labor and delivery – all of which was a deviation from the applicable standards of care.

It is further my opinion to a reasonable degree of medical probability that the Defendant Healthcare Providers deviations from the standards of care outlined above were a direct and proximate cause of Na'Jai Johnson's hypoxic-ischemic brain damage and permanent neurological injuries. Preliminarily, had Nurse Doyle complied with the applicable standards of care and timely informed Dr. Michel and/or Dr. Amuh of the non-reassuring fetal heart rate status there would have been an opportunity to initiate additional intrauterine resuscitative measures and administer betamethasone and magnesium sulfate pending the results of a biophysical profile. It is also my opinion that had a biophysical profile been timely performed, it would have shown findings requiring timely STAT or emergent cesarean section delivery. Moreover, irrespective of the result of the biophysical profile, in light of Ms. Willis' worsening blood pressures, complaints of decreased fetal movement, and deteriorating fetal status, the standard of care required that Dr. Michel and Dr. Amuh timely move toward cesarean delivery.

In either event, it is my opinion to a reasonable degree of medical probability that had the standard of care been met, a STAT or emergent cesarean section delivery would have and should have been ordered no later than 1645. Based on the time elapsed between Dr. Michel's decision and delivery of Na'Jai Johnson, it is more likely than not that she would have been delivered by 1708. As such, Na'Jai Johnson should have and would have been delivered prior to the onset of the terminal bradycardia preceding her birth and avoiding unnecessary exposure to damaging hypoxia, ischemia, and metabolic acidosis. Every minute of worsening fetal hypoxia and ischemia that goes unresolved increases the likelihood of a fetus suffering irreversible neurological injuries, and had Na'Jai been delivered consistent with the standard of care it is more likely than not that her brain damage would have been minimized or completely avoided.

This letter is not, nor is it intended to be, an exhaustive description of all my opinions, conclusions and/or their basis. The opinions stated above are given to a reasonable degree of medical probability and/or certainty. I reserve the right to modify, amend, and/or supplement these opinions upon review of additional information and/or documents.

Sincerely,

Andrew W. Robertson, M.D.

Michael Jones Private Detective
6555 S. Kedzie
Chicago 60629

# EXHIBIT B

## CERTIFICATION

Pursuant to the provisions of 42 U.S.C. § 233, and by virtue of the authority delegated to me by the Attorney General under 28 C.F.R. § 15.4 and through the United States Attorney for the Northern District of Illinois, I hereby certify that I have read the complaint in *Alexis Willis and Jernois Johnson, Jr., etc. v. Advocate Health Care Network, etc., et al.*, No. 2020 L 2753 (Circuit Court of Cook County, Illinois), and all attachments thereto. On the basis of the information now available, I find that at the relevant times, Chicago Family Health Center, Inc., was a private entity receiving grant money from the Public Health Service pursuant to 42 U.S.C. § 233. Further, I certify that Marjorie Michel, M.D., was acting within the scope of her employment at Chicago Family Health Center with respect to the incidents referred to in the complaint. Accordingly, for purposes of the above case, Chicago Family Health Center, Inc., and Marjorie Michel, M.D., are deemed to be employees of the United States pursuant to 42 U.S.C. § 233, for federal statutory tort purposes only.

s/ Thomas P. Walsh

THOMAS P. WALSH
Chief, Civil Division
Office of the United States Attorney
for the Northern District of Illinois

Date: September 27, 2020